# MACY NORRIS v. ST. LOUIS, IRON MOUNTAIN AND SOUTHERN RAILWAY COMPANY, Plaintiff in Error.

### Division Two, February 6, 1912.

1. **APPEAL: Pending Against Another Defendant.** Suit was brought against two defendants, but, before the cause was submitted to the jury, dismissed as to one of them, and that one appealed. *Held*, that the appeal as to it was improvidently granted, since no judgment had been rendered against it, and therefore the pendency of its appeal did not bar its codefendant, against which a verdict was returned and a judgment entered, from thereafter suing out a writ of error.

2. ——: ——: **Bill of Exceptions: Amendment Nunc Pro Tunc to Include Only Remaining Defendant.** Where there were two defendants, and the cause was dismissed as to one of them, and a verdict returned and a judgment rendered against the other, and a timely order made allowing an appeal to that defendant as to which the cause was dismissed, and time within which it might file a bill of exceptions, it was proper, upon a proper showing, for the court, by a *nunc pro tunc* entry, to amend the order allowing the appeal and time so as to embrace the other defendant against which the judgment was entered.

3. **MOTION FOR NEW TRIAL: Admission and Exclusion of Evidence: General Assignment.** Assignments in defendant's motion for a new trial that "the court erred in admitting illegal and incompetent evidence offered by plaintiff" and "the court erred in excluding legal and competent evidence offered by defendant" are sufficient to call the trial court's attention to alleged errors in admitting and excluding evidence, and to authorize the appellate court to consider any objection and exception to the admission or exclusion of evidence offered at the trial.

4. **EVIDENCE: Condition of Plaintiff's Health: Non-Experts.** Non-expert witnesses may testify as to the appearance of plaintiff as indicating the condition of her health both before and after the injury. And where they give the whole facts upon which they base their opinions, they may give their opinions. The fact that they are non-experts may weaken the probative force of their testimony, but not its competency.

5. ——: **Photographs: Not Proven: Harmless.** Photographs purporting to show the condition of the engine and cars immediately after the wreck, but not of the car in which plaintiff was riding at the time of the wreck, sworn to be true reproduc-

tions of the engine and cars by plaintiff but not by the photographer, may not be properly proven; but where there is no material difference in the testimony offered by plaintiff and defendant as to the condition of the cars and engine after the wreck, their admission is not reversible error, since defendant sustained no injury from their introduction.

6. INSTRUCTION: Injury to Passenger: Presumption of Negligence. It is not error to instruct the jury that proof of the derailment and wrecking of the car in which plaintiff was riding as a passenger raised a presumption that the derailment and consequent injuries to plaintiff were the result of negligence on the part of defendant railroad company.

7. ———: ———: Safe Employees: High Degree of Care. A railroad company is required to operate its passenger trains with careful employees and to exercise a very high degree of caution to avoid wrecks and consequent injuries to passengers; and an instruction so declaring is proper.

8. ———: ———: To be Satisfied. An instruction telling the jury in a suit by a passenger for injuries, that the burden rests upon the railway company "to prove to your satisfaction" that the roadbed, track and ties were reasonably safe and sound" at the place of derailment, is, at its worst, non-direction, not misdirection. It does not require the jury to find beyond a reasonable doubt that defendant was not guilty of any negligence before they could render a verdict in its favor.

9. ———: Non-Direction. An appellant in a civil case cannot complain of a failure of respondent's instruction to define a word used therein unless he asks for and is refused a correct instruction on the point.

10. ———: Statements Against Interest: Presumed to be True. The court did not err in modifying defendant's instruction telling the jury that plaintiff's statements against her interest "must be taken as true" to read "are presumed to be true."

11. IMPROPER REMARKS: No Request for Rebuke. Except in extreme cases a mere objection and exception to the remarks of respondent's counsel to the jury, will not authorize a reversal. There should also be a request that the court rebuke counsel, and if no rebuke is administered an exception should be saved.

12. INJURY TO WOMB: Not Made Known to Conductor or Physician: Seeking Medical Aid. Plaintiff's case is not weakened by the fact that, at the time of the wreck of the passenger train, being inquired of as to her injuries, she failed to tell defendant's conductor and physicians that her womb or genital organs were injured, nor by the fact that she returned to her relatives and friends in a distant city before seeking medical aid, nor by

the fact that she did not complain of the injury to her womb when she first placed herself under the care of a physician.

13. **VERDICT: Sufficiency of Evidence: Reversal on Appeal.** Where every feature of plaintiff's case in an action at law is supported by substantial evidence, the appellate court cannot reverse a judgment in her favor on the ground that there is substantial contradictory evidence.

14. ————: **Excessive: $10,000: Injury to Womb.** The evidence is clear that plaintiff, an unmarried woman, prior to her injuries, was in excellent health, able to satisfactorily perform her labors as a saleslady; but as to the extent and permanency of her injuries is somewhat conflicting. While it is clear that she has suffered much pain and that she cannot be restored to health without undergoing a painful surgical operation, it is not proven that her injuries are necessarily permanent. *Held,* that a verdict for $10,000 is too large by $2500.

Error to Jackson Circuit Court.—*Hon. Henry L. McCune,* Judge.

AFFIRMED (*conditionally*).

*Edw. J. White* for plaintiff in error; *Elijah Robinson* and *Martin L. Clardy* of counsel.

(1) The court admitted incompetent and illegal evidence on the part of the plaintiff. (a) The evidence of the various non-expert witnesses, giving their opinion that the plaintiff appeared to be in perfect health; that "they had noticed her quit waiting on customers as though in terrible misery;" that they had noticed "frowns on her face as though she was suffering;" that she was in perfect health; for the reason that all these various statements of the non-expert witnesses were calculated to injure the defendant's cause before the jury. The witnesses were not qualified to give such opinions. Non-expert witnesses are only permitted to detail facts and not to give their opinions, such as the witnesses here were permitted to do, as to the condition of the plaintiff's health prior and subsequent to the alleged injury. Sharp v. Railroad, 114 Mo. 100. (b) The five photographs, identified only

by the plaintiff as having been made by some man named Butcher, who lived in Colorado, and mailed to her by the person who took the photographs, without any other identification or proof of the correctness of such photographs. Photographs are never admissible in evidence until they are proven by testimony to be true photographic prints of the thing in question. Baustian v. Young, 152 Mo. 317; Goldsborough v. Railroad, 60 N. J. L. 49; Beardslee v. Columbian Twp., 188 Pa. St. 496; Hupfer v. Distilling Co., 144 Wis. 279; Pessolano v. Pessolano, 34 Misc. Rep. 16; Trahen v. Hicks, 131 Mo. 180. (3) The court erred in giving instructions 1, 2, 3 and 4 on the part of the plaintiff. (a) The plaintiff's first instruction is defective in several particulars. In instructing the jury that the law presumed that the injury to the plaintiff was caused by defendant's negligence and that the fact of the injury and the derailment "make it a presumptive case for the plaintiff." Huff v. Cox, 2 Ala. 311; Saunders v. Railroad, 147 Mo. 424; Blair v. Railroad, 31 Mo. App. 231; Eldridge v. Railroad, 32 Minn. 253; 21 Am. & Eng. Ry. Cas. 496; Patterson, Ry. Acc. Law, p. 443; Bailey v. Railroad, 152 Mo. 461; Ham v. Barrett, 28 Mo. 388; McVey v. Railroad, 125 Mo. App. 569; Yarnell v. Railroad, 113 Mo. 579. The plaintiff's first instruction was also erroneous because after advising the jury that the plaintiff had established a "presumptive case" in proving her injury and derailment, the instruction made such presumptive case conclusive, unless the defendant had discharged its duties referred to in other instructions of the plaintiff. (b) The third instruction given at the instance of the plaintiff, predicated a right of recovery upon the defendant's failure to employ "careful employees," and placed the duty in employment of its employees as "a very high degree of care and caution," whereas the law only requires ordinary care and caution in the employment of its employees. This instruction was

also erroneous in placing the burden of proof upon the defendant and compelling it to establish to the "satisfaction" of the jury, without any guide to the jury as to how or in what manner they should be "satisfied," thus permitting the jury to require a degree of proof that might convince them beyond the peradventure of a doubt and permitting them to enter the field of caprice and conjecture. Shinn v. Tucker, 37 Ark. 589, 11 Ency. Pl. & Pr., 183; Kirchner v. Collins, 152 Mo. 397; Suse v. Railroad, 80 N. Y. Supp. 513. (4) The court erred in failing to withdraw incompetent and prejudicial remarks of counsel during their argument to the jury. Williams v. Railroad, 123 Mo. 573; Harper v. Western Union, 92 Mo. App. 304; Estes v. Railroad, 111 Mo. App. 1; Lew v. Transit Co., 106 Mo. App. 335; Rice v. Solley, 176 Mo. 148; Winder v. House Furnishing Co., 165 Mo. 542. (5) The court erred in failing to set aside the verdict because it was excessive. The evidence, disclosed by the entire record, shows that the plaintiff's injuries were not connected with the derailment of the defendant's passenger train and aside from a few bruises on her person there was an entire absence of any connection between the only permanent injury shown, i. e., the slight displacement of her womb, with the derailment of the defendant's train. To permit a verdict in this amount to stand upon such flimsy evidence as the record in this case discloses, as said by this court in the Partello case, "would be so excessive and beyond reason, and so gross, as to warp the sense of justice. It could not be accounted for upon any theory, other than prejudice and passion." Partello v. Railroad, 217 Mo. 661.

*Boyle & Howell* for defendant in error.

(1) During the trial the case was dismissed as to the Missouri Pacific Company, but proceeded to a

verdict against its codefendant. Motions for new trial and in arrest were filed, heard and overruled, and an affidavit for appeal to the Supreme Court filed by the Missouri Pacific Railway Company and leave given to it to file a bill of exceptions on or before the 3d day of the October term, 1907. The Missouri Pacific Railway Company also gave bond for appeal at the time to the Supreme Court. This, then, was the status of the case at the time. In one and the same order and at the same time the Missouri Pacific Railway Company was allowed an appeal, and given time to file bill, and its appeal bond fixed at $20,000, which was duly filed and approved. The affidavit for appeal and the bond show that the appeal was taken by the Missouri Pacific Railway Company. The bill of exceptions shows that the appeal was taken by the "defendant." If "defendant" means this defendant, then there are two proceedings, one by appeal and the other by error, and proceeding by error can not be maintained while the appeal continues, and the writ should be refused unless the appeal has been dismissed. If the appeal was not taken by the plaintiff in error, then it was never allowed leave to file bill of exceptions and has no bill here. And the motion for entry *nunc pro tunc* was improvidently sustained. Harris v. Chitwood, 210 Mo. 560; St. Louis v. Butler, 201 Mo. 396; Turner v. Edmonston, 210 Mo. 419. If the appeal has not been dismissed, then this writ of error should be dismissed as it appears that the appeal was taken by the plaintiff in error herein. Vigo v. Bradford, 129 Mo. App. 656. (2) "A non-expert witness may give his opinion as to the apparent health of a person whom he has had opportunity to observe. Thus a non-expert witness 'may testify that a person appeared to be suffering, was weak and helpless, appeared sick, looked pale or paler than usual or was in declining health.'" Partello v. Railroad, 217 Mo. 655; State v. Buchler, 103 Mo. 207. (3) As to the

photographs introduced in evidence showing the condition of the train and surroundings immediately after the wreck, the plaintiff testified that they were correct representations of the cars and surroundings which she saw at the time. She testified that she saw the photographer take them. Baustian v. Young, 152 Mo. 317; Kirkpatrick v. Railway Co., 211 Mo. 82. The authority is overwhelming that these photographs were admissible in evidence under the circumstances and the evidence of the case; but even if they were not, how could they have harmed the appellant? No photograph could have shown this wreck as bad as it was. The whole testimony of all the witnesses shows the complete wreck of the train; it would not have been possible for a photograph to exaggerate the situation as detailed by the testimony of the witnesses. (4) Appellant complains that the trial court erred in instructing the jury that ''the law presumed that the injury to the plaintiff was caused by defendant's negligence.'' Instruction one objected to by appellant, after stating the preliminary facts and requiring the jury to find plaintiff a passenger, etc., contains this language: ''Then the law presumes that such injury to plaintiff was caused by defendant's negligence and such facts if proven by a preponderance of the evidence make out a presumptive case for the plaintiff and you should find a verdict for the plaintiff,'' etc. Hipsley v. Railroad, 88 Mo. 352; O'Gara v. Transit Co., 204 Mo. 733. The accident was not the result of that want of care and vigilance which the law made it obligatory on the defendant to bestow. Price v. Railway Co., 220 Mo. 444. Defendant was required by the law to assume the burden of showing that it exercised the highest degree of care, and it must show that before it can avoid the ''presumption that it was occasioned by some negligence of the defendant.'' Bailey v. Railroad, 152 Mo. 461, quoted by appellant, has no application to the case at bar and the use of the word presumption is not in

all cases forbidden.    Clark v. Railroad, 127 Mo. 207.    (5) The damages were not excessive.    The case of O'Gara v. Transit Company, 204 Mo. 743, is similar in facts and injuries to plaintiff's.    Dr. W. Eugene King testified (among other things) "that the womb was tipped forward quite a great deal; tipped over and has adhered to the bladder and the other viscera about there; and that it was bent quite a little at the neck, 'which we call anteflexion.'" That these conditions cause the plaintiff to suffer a great deal from month to month at the regular menstrual flow and produce a great deal of nervousness and general ill health.    They keep the patient in a state of nervous tension at the menstrual time, and they suffer a great deal during the menstrual period.    At the present time "her health is very poor" and being asked as to whether such conditions might be cured, he answered: "Local treatment only relieves them, and does not cure them.    Surgical interference sometimes very greatly relieves them, but I do not believe the condition is curable.    I do not think a surgical operation would give her permanent relief; but a surgical operation would relieve her in a measure."    And being asked: "Is there any treatment then, which, in your judgment would give her permanent relief?" he answered: "No sir."    Dr. W. S. Wheeler testified: "I think she is an unhealthy woman, her nervous system is broken down, and the uterus out of place, and there is a thickened condition of the tissues which would naturally make her the wreck she appears to be and is."    He then described the conditions, the adhesions, the ligaments and the womb of plaintiff.    He said her condition would naturally disturb her health, and that the condition was abnormal and unhealthy. And being asked as to whether the conditions he found were permanent, he answered: "Well, they are permanent now.    I don't know what otherwise it might be.    If a surgical operation was performed on her,

there is some hope of relieving her, but at the present it is a permanent disease.'' He said that a surgical operation to break up the adhesions and straigthen the displaced or bent womb might and sometimes does correct it. ''It is a very doubtful procedure.'' Doctor Snell, physician and surgeon in Kansas City thirty years, in the practice forty years, testified that: ''I found anteflexion, that means the uterus is bent upon itself with the fundus or top of the uterus bending forward and bent about forty-five degrees upon itself.'' He said he meant forty-five degrees from the normal. He showed a diagram marked Exhibit 1 taken by the use of instruments, which indicated the exact position of the uterus. Being asked as to what effect such position of the uterus would have upon the health of the patient, he answered: ''Well, a uterus in that condition, pressing upon the bladder, would by reflexed nervous irritability, produce a nervous derangement of the entire system. Q. What would you say, Doctor, as to these conditions being permanent or otherwise? A. Nature can never restore it to it's proper position, and nature can not correct the condition of the nervous system unless it is restored to its proper position. Q. In what way would the patient find relief? A. Why, we would have to make an incision down into the pelvic cavity and break up the adhesions and restore it to its normal position, and anchor it to the abdomen in front.'' There can with such testimony be no doubt that the plaintiff has been permanently injured and disabled. Flaherty v. Transit Co., 207 Mo. 333.

BROWN, J.—Action for damages for alleged injuries sustained by plaintiff through the derailment of one of defendant's trains upon which she was a passenger. Plaintiff had judgment below for $10,000, and the defendant brings the case here by writ of error.

This suit was originally instituted in the circuit court of Jackson county, Missouri, on July 10, 1905, at which time the plaintiff in her petition did not allege any injury to her womb; but the first suit was dismissed, and in the present action, which was instituted on September 18, 1905, she alleges that "she was bruised and injured about her back and spine and over the region of her kidneys and in the kidneys. Her left hip was severely bruised and wrenched, left leg was severely wrenched and bruised in and near the knee. Her left shoulder was bruised and contused. Her right leg was severely wrenched, bruised and contused. Her uteris was misplaced and anteverted, thereby causing inflammation of the pelvic parts and adhesions of the uterus to the pelvic walls, on account of which plaintiff has since suffered almost constant pains in her pelvic regions and in her head and back. That by reason of such injuries, her nervous system was severely shocked and impaired, and that said injuries are permanent and lasting in their character and effect."

Plaintiff testified that on June 9, 1905, she was a passenger on defendant's train between Texarkana and Hope, Arkansas, a distance of thirty-five miles. A few miles from Texarkana, said train was derailed and wrecked, some of the front cars leaving the track and sliding or rolling down an embankment; the front end of the chair car in which plaintiff was riding jumped off the track, sliding partly down an embankment, the rear end thereof remaining attached to the dining car on the track. When the wreck occurred, plaintiff tried to arise in her chair, and by the sudden movement of the car was thrown violently against the arm of her chair and down into the aisle of the car, where she was trodden upon by persons who were scrambling to get out of the car. In being thus thrown down and trodden upon, she received severe bruises upon her left hip, abdomen, back, shoulder and legs, caus-

ing a displacement of her womb, and resulting in permanent injury to her health. After the alleged injury, plaintiff went on to Hope, Arkansas, where she spent the night and the following day with friends. She then returned to Texarkana, where she remained one night, going thence by train to Kansas City, where some of her relatives and friends resided, and where she applied for and received the first medical aid for her injuries.

The physician who treated plaintiff at Kansas City testified that there were many bruises upon her body and limbs, and that she was in a very nervous condition bordering on collapse when she came into his office. He gave her internal treatment for her nervous condition and a local application for her bruises, but did not then discover any injury to her womb or uteris. She remained under this physician's care for three months, and more than a month after the injury, continued to be nervous, complaining of severe pains in her back and the lower part of her pelvis, accompanied by suppressed menstruation. He then examined her genital organs for the first time and found them very much congested and inflamed, and her womb anteverted or tipped forward, causing her much pain, and producing a highly nervous condition. Her physician testified that this unnatural condition of her womb could have been produced by a bruise or blow of any kind.

Said physician and two others employed by plaintiff, together with three physicians employed by defendant, examined plaintiff a short time before the trial. The physicians employed by plaintiff testified that her womb was still anteverted or anteflexed and adhered to her bladder, causing severe pains, and greatly affecting her nerves, stating that in their opinion it was very doubtful if plaintiff could be restored to a normal condition of health.

The three physicians employed by defendant testified that plaintiff's womb was not anteverted and did not adhere to her bladder, but on the contrary, was slightly retroverted or tilted backward, but not sufficiently so to in any manner impair her health.

Plaintiff further testified that prior to the injury complained of she had never been afflicted with any womb trouble or disease of the nerves and was in perfect health; that she was able to work all day and until ten o'clock at night as a saleslady in a dry goods and millinery store, for which services, together with assistance rendered in purchasing goods, she received fifty dollars per month. That she lost three months from her employment immediately following her injuries, and then returned to work at forty dollars per month. That while since her injury she had been able to do some work as a saleslady, she has been and is now afflicted with a severe nervous trouble, accompanied by constant pains in her back and genital organs, so that she can only stand on her feet during short intervals of time; that she is also subject to fainting spells; which ailments have caused her to lose much time from her work, and forced her to resign her position.

May Cooper, one of plaintiff's witnesses, and the party whom she visited at Hope, Arkansas, testified that plaintiff was so nervous and suffering to such an extent the day following the wreck that she was compelled to lie down most of the time; that there were many bruises upon plaintiff's body and limbs at that time. That she roomed with plaintiff several months in the years 1903 and 1904, during which time plaintiff slept soundly, appeared to be in excellent health, and worked long hours as saleslady, without fatigue or inconvenience. That immediately after the wreck and several months later she roomed with plaintiff, and noticed that she could no longer sleep soundly,

but was very nervous, and apparently in very poor health.

A number of witnesses introduced by plaintiff testified that prior to her alleged injuries she appeared to be in perfect health, had a clear complexion, full, rosy cheeks, bright eyes, and weighed about one hundred and thirty pounds, and was able to work long hours assisting her employers in selling and buying goods. That in a few months after she received her alleged injuries, her weight decreased to one hundred and two pounds, her complexion became pale and sallow and her eyes dull and languid, in which condition she continued until the time of the trial; and that she is now subject to fainting spells which cause her to lose much time from her work.

On the part of defendant, there was testimony that its engineer and conductor went through the train and among the passengers immediately after the derailment, and could find no one who claimed to have been injured in any manner.

Four physicians whom defendant sent to the wreck testified substantially to the same effect. One of said physicians testified that he knew plaintiff, having prescribed for her two or three times in 1904; that at the wreck he asked her if she was seriously injured, and she replied that she was "pretty badly shaken up, but not seriously hurt, she thought." Two other persons who were riding on the same car with plaintiff at the time of the derailment, testified that they saw no one thrown out of their seats or thrown down in the aisle of the car. One of these witnesses stated that she talked with plaintiff just after the wreck, and that plaintiff seemed to be greatly excited, but made no complaint of having been injured.

The conductor of defendant's train testified that at the time of the derailment he was standing in the aisle, about the middle of the chair car where plaintiff was riding; that he was not thrown off his feet,

and that the car did not stop very suddenly. He, however, stated that the front end of said chair car was thrown off the trucks and the rear wheels off the track; that when it stopped, the passengers were all "making for the door to get out;" but he saw no one thrown down or out of their seats.

Defendant also introduced evidence to the effect that plaintiff did not complain of her injuries to the family with whom she stopped over night at Hope, Arkansas, immediately after the wreck. That she called the lady with whom she stopped into her bedroom and showed her a small red spot the size of a dime on one of her hips which she thought was rubbed by her dress. That she went walking, driving and street car riding next day with friends. There was evidence to the effect that before the wreck plaintiff was refused life insurance because she had had hemorrhages some ten years before and her father had died of consumption. That before receiving her alleged injuries for which she is suing, she was treated for dyspepsia, malaria, and at times had a sallow complexion, frequently took medicine, and expressed anxiety about the condition of her lungs.

Several employees of defendant testified that defendant's roadbed and track were in good condition at the place where the wreck occurred. That defendant's cars and engine were likewise in perfect condition and were not running at an excessive rate of speed, and that the wreck could not have been avoided by the highest degree of care on the part of defendant's servants.

On this point, plaintiff testified that she saw a number of rotten railroad ties on defendant's roadbed which had been broken up by the derailment, and that a rail of defendant's track protruded through the bottom of the car on which she was riding, and had no ties hanging to it; that the ties from which said

rail had been torn appeared to be rotten. She also testified that the alleged injury to her womb was not discovered by her physician until after her first suit was instituted.

This action was originally prosecuted against the Missouri Pacific Railway Company, jointly with the defendant, but before the cause was submitted to the jury, the plaintiff dismissed her suit as to the Missouri Pacific Railway Company.

Such additional parts of the record proper and evidence as are necessary to a full understanding of the case will be noted in connection with our rulings upon the issues presented.

## OPINION.

Plaintiff (defendant in error here) contends that we are precluded from considering this appeal, and particularly that we should refuse to consider the alleged errors in the admission and rejection of evidence noted in the bill of exceptions, because, (1) there is an appeal pending in this case on the part of the Missouri Pacific Railway Company, one of the defendants herein; (2) the bill of exceptions was not filed within the time granted by the court; and (3) defendant's motion for a new trial does not specifically designate the evidence which it claims was improperly admitted or excluded.

The record shows that an appeal was granted to the Missouri Pacific Railway Company, after the action had been dismissed as to that defendant.

While it is true that the same defendant cannot bring a cause to this court both by appeal and writ of error, yet, in this case no judgment had been rendered against the Missouri Pacific Railway Company, and therefore it was not entitled to an appeal, and the act of the trial court in improvidently granting such appeal or the pendency thereof in no way barred its

codefendant, the St. Louis, Iron Mountain & South-
ern Railway Company, from suing out its writ of error
herein.

The second contention of plaintiff grows out of the
fact that the record proper indicates that the order
extending the time beyond the term at which the judg-
ment was rendered for settling and filing bill of ex-
ceptions was granted to the Missouri Pacific Railway
Company, and not to the St. Louis, Iron Mountain &
Southern Railway Company. However, the order ex-
tending the time was by proper application to the
trial court amended *nunc pro tunc,* so as to embrace
the St. Louis, Iron Mountain & Southern Railway Com-
pany; and we think this amendment was properly
made. There was evidence that there was no other
suit pending in the trial court in which the plaintiff,
Macy Norris, was a party; and as the cause had been
dismissed as to the Missouri Pacific Railway Com-
pany, it was not entitled to an appeal, and we are con-
vinced that the trial court would not have intentional-
ly granted it an appeal or time within which to file ex-
ceptions.

The order extending time to file bill of exceptions
was evidently intended by the trial court to apply to the
St. Louis, Iron Mountain & Southern Railway Com-
pany. We find that the record entries of the clerk and
the entries on the judge's docket afforded ample war-
rant for the court to make the *nunc pro tunc* amend-
ment of its record; and we hold that the bill of ex-
ceptions was filed in due time.

Defendant's motion for a new trial contains the
following general allegations of error:

"The court committed error in admitting illegal
and incompetent evidence offered by plaintiff.

"The court committed error in excluding legal and
competent evidence offered by defendant."

To sustain her contention that the foregoing allegations are insufficient to call the trial court's attention to the alleged errors in the admission and exclusion of evidence, plaintiff cites the rulings of this court in State v. Brown, 168 Mo. l. c. 474, and State v. David, 159 Mo. 534.

These cases sustain plaintiff's theory, but the rule of law which they announce is no longer adhered to by this court. [State v. Barrington, 198 Mo. l. c. 76; Collier v. Lead Co., 208 Mo. l. c. 257.]

In the case of Collier v. Lead Company, 208 Mo. l. c. 258, this court in speaking through Judge GRAVES, said: "We announce again that if objections are made and exceptions saved to the action of the trial court in the admission or exclusion of testimony, then the general assignment in the motion is sufficient."

We think the rule regarding motions for a new trial announced in the Barrington and Collier cases is sound; and therefore overrule plaintiff's attack on the bill of exceptions.

This brings us to the assignments of error upon which the defendant (plaintiff in error here) seeks a reversal of the judgment.

Defendant contends that error was committed in permitting non-expert witnesses to give evidence of the condition of plaintiff's health before and after her alleged injuries.

It is true that mere opinions of non-expert witnesses as to the health of a party would not be admissible; but in this case the court did not permit the witnesses for plaintiff to merely give their opinions, but required them to state the whole facts upon which their opinions were based. Consequently, their testimony was entirely competent as tending to prove that plaintiff was in a healthy condition before the accident, and also that her health was poor after the accident. It is true that a non-expert might easily be mistaken about the condition of the health of an individual with

whom he was intimately acquainted, and, for that mat-
ter, the same can be said of the testimony of medical
experts.    The fact that some of plaintiff's witnesses
were not experts only goes to weaken the probative
force of their testimony, and does not render them in-
eligible to testify to the appearance of the plaintiff
as indicating the condition of her health.

The cases of Sharp v. Railroad, 114 Mo. 94, and
Railroad v. Demsey, 40 Tex. Civ. App. 398, cited by de-
fendant, instead of sustaining its contention, are very
good authority for the admissibility of the evidence
of non-expert witnesses, where the facts upon which
such witnesses base their opinions are detailed to
the jury, as in this case.    [Partello v. Railroad, 217
Mo. 645.]

Defendant also complains of the introduction of
five photographs purporting to show the condition
of defendant's engine and some of its cars immediately
after the wreck.    The photographer who made these
pictures was not sworn, and the only evidence that they
are true reproductions of the cars and engine as they
appeared immediately after the wreck, is the testimony
of the plaintiff that they are correct representations
of said cars and engine.

While it may be true that these photographs were
not properly proven, we do not think their introduction
could have harmed the defendant in any particular.
They do not purport to be photographs of the car on
which plaintiff was riding; and as there is no material
difference in the evidence offered by plaintiff and de-
fendant as to the condition of the engine and cars af-
ter the wreck, we cannot conceive of any injury that
defendant sustained by the introduction of these
photographs.    Their admission was not reversible er-
ror.

Defendant in its brief asserts that the evidence
of its engineer and also of the physicians sent by it to
the wreck, to the effect that they went among the pas-

sengers, made a diligent inquiry and failed to find anyone who complained of having been injured, is competent evidence to prove that plaintiff was not injured. We agree with defendant on this point; but as the evidence of all these parties was admitted without objection by plaintiff, defendant had the full benefit of its probative force, and on this point is without any grounds of complaint.

Defendant further complains that the court committed reversible error in excluding a part of the testimony of Doctor Cordier, an expert who examined plaintiff a short while before the trial. Upon reading the record, we find that the court only sustained one objection to the testimony of Doctor Cordier, afterwards permitting him to make a full explanation of his knowledge of plaintiff's condition, and also to criticise and discredit the evidence of plaintiff's physicians and the methods they adopted in ascertaining the nature and extent of plaintiff's injuries. Consequently, this alleged error of the trial court must be disregarded.

Defendant complains of plaintiff's instructions numbered 1 and 2 as follows:

"1. The court instructs the jury that if they find and believe from the evidence that on or about the 9th day of June, 1905, the plaintiff was a passenger on one of defendant's trains, and that while so a passenger and being carried thereon upon defendant's road, the car in which plaintiff was being carried was derailed, and that plaintiff was thereby thrown from her seat in said car and thereby injured, then the law presumes that such injury to plaintiff was caused by defendant's negligence, and such facts, if proven by a preponderance of the evidence, make out a presumptive case for the plaintiff, and you should find a verdict for the plaintiff, unless you further believe from the evidence that notwithstanding this presumption the defendant at the time of the happening of the injury had in fact

then fully performed, or was then fully performing its duty, as defined and stated in other instructions herein, toward plaintiff as such passenger; or that such injury to plaintiff, if any, did not occur because of any failure of the defendant in such respect.

"2. The court further instructs the jury that having received the plaintiff upon board of one of its cars as a passenger for the purpose of transportation along its line, the duty and obligation of the defendant railroad to the plaintiff and its other passengers on that car was to carry such passengers safely as far as it is capable by the exercise of a very high degree of care and caution; and the defendant is responsible for all injury resulting to such passenger from any failure to exercise such care, and when the passenger suffers injury by the derailment of the train or car in question, the presumption is that it was occasioned by some negligence of the defendant railroad, and the burden of proof is cast upon defendant to rebut this presumption of negligence and establish the fact that there was no negligence on its part, and that the injury was occasioned by inevitable accident, or by some cause which could not have been avoided by the exercise of a very high degree of care and caution; and by a very high degree of care and caution as used in these instructions is meant that degree of care which is ordinarily used by a very careful and skilful person under the same or similar circumstances."

Defendant contends that it was error to tell the jury in these instructions that proof of the derailment and wrecking of the car on which plaintiff was riding as a passenger raised a presumption that the derailment and consequent injuries to plaintiff were the result of negligence on the part of defendant, citing the case of Bailey v. Railroad, 152 Mo. l. c. 461, wherein Judge GANTT speaking for this court said: "This court has, on more than one occasion, condemned the practice of instructing juries as to a presumption of

negligence, when all the facts are in evidence . . . When the facts are known and admitted or are testified to by witnesses, then it is the province of the jury to pass on their legal effect under proper instructions. There is no occasion for indulging in presumptions.''

What was said in the Bailey case about presumptions was then and is now sound law, as applied to the facts in that case, which involved an alleged injury to a conductor in charge of a street car through negligence of another street car company, in failing to keep its crossing in repair. But quite a different rule applies to injuries received by passengers from that which applies to employees of a transportation company.

In the recent case of Price v. Metropolitan Street Railway Company, 220 Mo. l. c. 446, a suit involving injuries to a passenger on a street railway car, Judge GRAVES, speaking for the court in Banc, approved an instruction to practically the same effect as those now assailed by defendant. In that case, the instruction approved by the court in Banc contained the following provision:

''If you believe from the evidence that there was a collision between two trains of defendant on one of which plaintiff was a passenger, (if you believe she was a passenger thereon), the presumption is that it was occasioned by some negligence of defendant, and the burden of proof is cast upon the defendant to rebut this presumption of negligence and establish the fact that there was no negligence on its part, and that the injury, if any, was occasioned by inevitable accident or by some cause which such highest degree of care could not have avoided.''

This doctrine was again approved in the case of Cooper v. Realty Co., 224 Mo. l. c. 723.

We therefore hold that instructions numbered 1 and 2, complained of by defendant, correctly announced the law as heretofore declared by this court.

Defendant also complains of instruction numbered 3, given at the request of plaintiff, as follows:

"3. The court instructs the jury that the defendant as a common carrier of passengers was bound to provide a reasonably safe track and roadbed, and reasonably safe and stanch road, good cars, and careful employees to manage the same, so far as same could be provided by the exercise of a very high degree of care and caution, and is responsible for all injuries resulting from a failure to exercise such care by its agents and servants, and if the jury believe from the evidence that while the plaintiff was a passenger on one of defendant's cars at the time and place in evidence, the car in which plaintiff was a passenger was derailed, and that plaintiff was thereby injured, then the burden of proof rests upon the defendant to prove to your satisfaction that the appliances and machinery by which said car was operated, and the roadbed, track and ties of the road at the place of derailment, were reasonably safe and sound, so far as the exercise of a very high degree of care, caution, skill, diligence and foresight could provide, and that said injury, if any, was caused by inevitable accident or defects in said machinery, appliances, roadbed, track or ties that could not have been seen, detected or known to the defendant, its agents or servants, by the exercise of such high degree of care and caution."

This instruction is assailed because it required defendant to operate its train with careful employees and exercise a very high degree of caution to avoid wrecks and consequent injuries to the plaintiff as one of its passengers. That part of said instruction numbered 3 now under consideration contained nothing but the sound doctrine that defendant was required to use a very high degree of care in all matters affecting the safety of its passengers.

Further complaint is made against this instruction numbered 3 on the ground that the word "satis-

fied'' should not have been used therein, because its use might imply that the jury was required to find beyond a reasonable doubt that defendant was not guilty of any negligence in order to authorize a verdict in its favor. Defendant cites the case of Kirchner v. Collins, 152 Mo. 397, in which the words ''fair preponderance'' as used in an instruction, were condemned as possibly implying something more than a mere preponderance of the evidence. It was, however, held in that case that the use of the words ''fair preponderance,'' while subject to criticism, did not constitute such an error as justified the reversal of the case; and we think the same is true as to the word ''satisfied'' in the instruction under consideration. The word ''satisfied,'' as used in said instruction numbered 3, is not a definite statement of the law which required the defendant to prove by a preponderance of the evidence that the wreck was not caused by negligence on defendant's part. The instruction thus being indefinite, did not constitute misdirection, but should be classified as non-direction, or a failure to instruct on all the law of the case.

The words ''preponderance of evidence,'' however well explained, have a somewhat indefinite meaning, and just what effect they have on the minds of the average jury is somewhat problematical.

In the trial of civil cases, many important duties rest upon the attorneys for both plaintiff and defendant, among which is to aid the court in giving to the jury all the instructions which they need to enable them to arrive at a correct verdict; and the unsuccessful litigant is not entitled to a reversal because the instructions given at the request of his adversary do not cover all the points upon which instructions should have been given, unless such unsuccessful litigant has prepared and requested proper instructions on the points about which he complains. [Kerr v. Railroad, 113 Mo. App. 5; Harmon v. Donohoe, 153 Mo. 274;

Matthews v. Railroad, 142 Mo. 666;. Browning v. Railroad, 124 Mo. 55.]

In Kerr v. Railroad, supra, Judge BROADDUS, of the Kansas City Court of. Appeals, correctly announced the law applicable to the point in issue, in the following language:

. "It is also contended that the court committed error in giving plaintiff's first instruction. It reads: 'The court instructs the jury that if they believe and find from the evidence,' etc. The objection is that it fails to place the burden of proof upon plaintiff to prove his case by a *preponderance* of the evidence. The instruction is good enough as it stands. The jury are instructed that they must arrive at a verdict from the evidence; that is, from all the evidence in the case. If defendant wanted the jury instructed as to the preponderance of the evidence, it ought to have asked the court to so instruct. But it failed in that respect. for which reason it is in no condition to avail itself of a technical error at most; and when it could have had, by asking, an instruction imposing the burden of proof upon plaintiff."

Defendant also complains of the action of the trial court in refusing to give its instructions numbered 1 and 2, which if given, would have told the jury that the plaintiff could not recover on account of alleged injuries to her womb, because her petition contained no charge that she was so injured.

The learned counsel who assigned this alleged error did not try this case in the lower court, and was evidently under the impression that the petition on which the case was tried below did not count upon any injuries to plaintiff's womb; but since the oral argument in this court, he has by stipulation agreed to a correction of the record, showing that the case was tried upon a petition which does charge injuries to plaintiff's womb, through the derailment of defendant's

train. Hence, it is apparent that defendant's instructions numbered 1 and 2 were properly refused.

Defendant further complains that the trial court erred in modifying its instruction numbered 4, which, as prayed, read as follows:

"4. The court further instructs you that the plaintiff, Miss Norris, has been a witness in her own behalf. You are the sole judges of her credibility. All statements made by her, if any, which are against her interest, must be taken by you as true; but her statements in her own favor are only to be given by you such credit as you, under all the facts and circumstances in evidence, may deem them entitled to."

This instruction as modified and given, reads as follows:

"4. The court further instructs you that the plaintiff, Miss Norris, has been a witness in her own behalf. You are the sole judges of her credibility. All statements made by her, if any, which are against her interest, are presumed to be true; but her statements in her own favor are only to be given by you such credit as you, under all the facts and circumstances in evidence, may deem them entitled to."

Appellant does not cites us to any authority condemning the modification of this instruction, and we are convinced that the law is more correctly announced in the modified instruction than in the form in which it was originally asked. Hence, the court did not commit error in making the modification.

Defendant also complains that the trial court committed reversible error in failing to withdraw incompetent and prejudicial remarks of counsel for plaintiff in his argument to the jury.

By the record it appears that plaintiff's counsel in his argument said: "Gentlemen, this young girl comes to you, not of the silk stocking aristocracy."

Objection to this remark was sustained, and plaintiff's counsel withdrew it; and continuing his argu-

ment, said: "Now, when she was asked about re-
signing, Judge Robinson says, 'Did you write out your
resignation?' And she answered, 'Why, no. Of
course not.' She is not like one of those big railroad
officials. When a railroad lawyer or a railroad presi-
dent resigns, they write it out and have a big red seal
on it and a pink ribbon and all that.''

Defendant objected to this remark, and the ob-
jection was sustained.

Counsel also said: "Years ago the father of this
brave little woman died of consumption, and left her
to make her own way in the world.''

Objection was made to this remark; but the court
does not seem to have made any ruling on same. As
the matter stated was clearly within the evidence,
there was no ground for objection. The fact that
plaintiff's father died of consumption, leaving plaintiff
an orphan, had been brought out in the evidence by the
defendant, as tending to show a probable cause for
the decline of plaintiff's health; and defendant had no
just grounds for complaint about an argument based
on evidence which it brought into the record.

In concluding, plaintiff's counsel said:

"And so far as the evidence in this case shows,
there is not one spot or blemish or black mark on her
character or name, wherever she has been, and this
is the first time in her whole life long that she has
ever been assailed, and she is assailed now because
this defendant company wants to save this round sum
of money which Judge Robinson says looks bigger and
bigger to this young lady all the time.''

The defendant excepted to all the foregoing re-
marks by plaintiff's attorney; but there is nothing in
the record to show that he asked the court to rebuke
counsel for plaintiff, or to withdraw the alleged im-
proper remarks from the consideration of the jury.

It is the peculiar duty of the trial court to regu-
late the argument of counsel and keep them within the

record.  In the case of Wendler v. People's House
Furnishing Company, 165 Mo. 542, Judge VALLIANT
in speaking for this court, said:    "The trial judge
having heard all the arguments is in a much better
position to know whether an improper influence has
been exerted than the appellate court can possibly be
with only a fragment of the speech quoted.  If the
privilege of argument has been abused and an ap-
peal to the passions has carried the  jury away from
its duty, the trial court should set aside the verdict."

The trial court should not permit argument which
amounts to an appeal to the jury to give judgment for
one party on account of his poverty or the wealth of
the opposite party; and trial courts should promptly
rebuke counsel who indulge in such arguments.   The
most effective way of shutting out improper argu-
ment is for the trial court to inform the attorney that
a verdict obtained by improper remarks will promptly
be set aside by the trial court.

Except in extreme cases, it is not sufficient to
secure reversal, for an attorney to merely object and
except to the remarks of opposing counsel.  He should
request that the transgressing counsel be rebuked by
the court; and where the proper rebuke is not admin-
istered, he should except to the court's failure to re-
buke; otherwise, this court will be disinclined to grant
a new trial based on improper remarks of counsel.
[State v. McMullin, 170 Mo. 608, l. c. 632; State v.
Phillips, 233 Mo. l. c. 307.]

Defendant also contends that the verdict of the
jury is not supported by substantial evidence.   We
have considered this feature of the case with great
diligence.   Three or four witnesses testified that they
saw external bruises upon plaintiff's body shortly
after the wrecking of defendant's train.  Whether the
blows that produced those bruises caused the present
disordered condition of her womb is not very clearly

239 Sup.—46

proven. It is always difficult to properly diagnose or prove the cause or extent of internal injuries. Plaintiff's physician testified that the injuries to her womb could have been produced by a blow, and the bruises upon her body furnish at least substantial evidence that she received sufficient blows to produce the injury to her womb.

Miss Cooper, whom plaintiff visited at Hope, Arkansas, the next day after the wreck, stated that the plaintiff expressed a desire to speedily return to her sister and friends at Kansas City before she became too sick to do so. If she made that statement, plaintiff evidently felt that she was seriously injured. Her case is not weakened by the fact that she failed to tell defendant's conductor, engineer and physicians at the wreck that her womb or genital organs were injured, nor by the further fact that she returned to her relatives and friends at Kansas City before seeking medical aid, nor by her failure to complain of said injury to her womb when she first placed herself under the care of a physician. She probably at that time did not know that her womb was injured, and it was only natural that an unmarried female should be very reluctant to make known an injury or ailment of that character.

The defendant proved that prior to plaintiff's alleged injuries she had taken medicine for dyspepsia and malaria, and had expressed anxiety about the condition of her lungs; but none of these ailments would, according to the record, tend to produce displacement of the womb.

We find that every feature of plaintiff's case is supported by substantial evidence; so that under the well-settled rule of this and all other appellate courts of this country, we cannot reverse the judgment on that ground.

Defendant also attacks the judgment for plaintiff on the ground that it is excessive, citing the decision

of this court in the case of Partello v. Railroad, 217 Mo. 661.

The overwhelming preponderance of the evidence is to the effect that prior to the injuries received by plaintiff, she was in an excellent state of health, able to perform her duties as a saleslady to the entire satisfaction of her employers. The evidence as to the extent and permanency of her injuries is somewhat conflicting; and while it is clear that plaintiff has suffered much pain and that she probably cannot be restored to health without undergoing a painful surgical operation, it is not proven that her injuries are necessarily permanent; and we therefore find that the verdict of the jury is excessive to the amount of $2500.

Accordingly, it is ordered that the judgment shall be affirmed for the sum of $7500 as of the date of the return of the verdict and the rendition of judgment and to bear interest from that date, if the plaintiff shall within ten days from this date remit the sum of $2500 as of the date of the verdict; otherwise, the judgment will be reversed and the cause remanded for a new trial.

It is so ordered. *Kennish, P. J.,* and *Ferriss, J.,* concur.