**Fannie Elnora RICHARDSON and Emma Schmidt, Appellants,**

**v.**

**Harold WENDEL, Harold Claybrooks, Ronnie Lee Pasley, and Claybrooks Ambulance Service, Inc., a corporation, Respondents.**

No. 51532.

Supreme Court of Missouri, Division No. 2.

March 14, 1966.

Rehearing Denied April 11, 1966.

Elwyn L. Cady, Jr., Kansas City, Chris Kahmann, Kansas City, Bruce Barnett, Wichita, Kan., for appellants.

Thomas A. Sweeny, E. E. Thompson, Kansas City, Popham, Thompson, Popham, Trusty & Conway, Kansas City, of counsel, for defendant-respondent Harold Wendel.

Darrell L. Havener, Vincent E. Rawson, Kansas City, Watson, Ess, Marshall & Enggas, Kansas City, of counsel, for defendants-respondents, Harold Claybrooks, Ronnie Lee Pasley, and Claybrooks Ambulance Service, Inc.

PRITCHARD, Commissioner.

Appellant, Mrs. Schmidt, contends that error was committed by the trial court in directing a verdict against her at the close of all the evidence on her $35,524 claim for personal injuries. Both appellants contend also that the trial court should have granted their oral motion "for a directed verdict on the issue of liability only, as a matter of law, as against each and every defendant." Appellant, Miss Richardson, contends that the trial court erred in allowing defendants' argument on the nonproduction of mere consultant physicians, and in permitting prejudicial cross-examination of her on the drafting and content of abandoned pleadings filed by her in her $77,917 claim, (upon which the jury's verdict was for respondents) for personal injuries. Both appellants' claims arose out of a collision between a truck operated by respondent Wendel and an ambulance, in which appellants were passengers, and which was operated by respondent Pasley. Both respondents claim that no submissible case of negligence against them was made.

Miss Richardson was a practical nurse and prior to the collision, January 31, 1963, was employed by Mrs. Schmidt, a woman eighty years of age, in her home in Kansas City, Missouri. On January 29, 1963, a Doctor Cunningham made a house call at Mrs. Schmidt's home and told her he wanted her to get some tests in a hospital. Apparently the hospital had no room that day, but on January 31, 1963, a nurse of the Osteopathic Hospital telephoned Miss Richardson to bring Mrs. Schmidt that night. Claybrooks Ambulance Service was called and arrived for Mrs. Schmidt about 8:25 p.m., and respondent Pasley and another carried her to the ambulance and put her in the rear thereof strapped to a cot or bed. Miss Richardson got in the front seat with Pasley, who drove south on Rainbow Boulevard with the siren on. Mrs. Schmidt asked him to turn it off, that she was in no hurry, but he kept it on through the Plaza area, and thereafter did turn it off permanently. When Pasley arrived at 29th and Troost, he proceeded north on Troost and then asked Miss Richardson the time. She told him 9:45, and he speeded up, saying, "Well, I will get back in time to hear the news and see how many died on the A. and B. Bridge" (where he had been on a previous ambulance call). As they arrived at 25th Street, the speed of the ambulance was about 15 to 20 miles per hour, the intersection was controlled by stop and go lights, and the traffic light in front of the ambulance was red. When the ambulance was in the intersection, Miss Richardson saw the truck, operated by respondent Wendel, approaching from the west on 25th Street at what could have been 20 or 25 miles per hour, when it was about 18 inches to 2 feet in the inter-

section. Pasley did not swerve, slow down or sound a horn, and Wendel drove into the side of the ambulance striking it where the driver sits. Miss Richardson was the only witness who testified at the trial, and related the foregoing facts.

Portions of the depositions of Pasley and Wendel were read on behalf of appellants as admissions against interest. Pasley was going through a red light on 25th Street, and right up to the time of the collision was going 5 to 10 miles per hour. He saw the eastbound truck on Troost before the collision when it was about four car lengths away from the intersection. Pasley did not speed up, slow down, honk his horn, or swerve in either direction. "Question, 'In how many feet did you stop that ambulance under the conditions that existed there at the scene of this accident at five miles per hour?' Answer, 'Approximately two car lengths.' Question, 'Two car lengths at five miles per hour?' Answer, 'About a car length.' " Pasley first noticed danger when he was 25 feet away, and figured that Wendel's truck was coming into the intersection.

On the southwest corner of the intersection there is a building, because of which an eastbound driver on 25th Street would have to be even with the sidewalk to see down Troost one-half block. Wendel first saw the ambulance, its red lights flashing, when he was about 4 or 5 feet from the west curb line of Troost, and the ambulance was 25 feet from the intersection. Wendel's speed was then 10 miles per hour, and he knew as soon as he saw the ambulance and its flashing red lights that it was an emergency vehicle and that there was danger of collision. He immediately applied his brakes and tried to turn left. His brakes were effective (they were not any less effective because of the mist and water conditions), and he did change his course of travel 6 or 7 feet. His right front fender "at its top" hit the left rear fender of the ambulance in front of the bumper about 2 feet. Wendel was familiar with the intersection. He saw the ambulance first traveling east on 31st Street at Gillham Road, and next in the intersection of 25th Street and Troost. In Wendel's best estimate, 25th Street was between 40 and 45 feet wide, and Troost Avenue was about 60 feet wide.

The evidence here certainly lacks definiteness and preciseness as to the positions of the vehicles on the streets, i.e., lanes of travel thereon, prior to the collision so that it could be accurately known the distance between the vehicles within which effective evasive action, such as the pleaded stopping or swerving, could be taken. However, we determine that a submissible case was made upon either pleaded theory against both drivers. Wendel first *noticed danger* when he was 4 or 5 feet west of the curb line of Troost Avenue at 10 miles per hour, at which time the ambulance was 25 feet from (south of) the intersection. He testified that the mist and water condition of the street did not make his brakes any less effective. Troost Avenue was about 60 feet wide. The jury could presume that the ambulance driver was not violating the law and was driving upon his right half of the roadway as required by § 304.015, RSMo 1959, V.A.M.S., nothing appearing to the contrary. Compare Hook v. St. Louis Public Service Company, Mo.App., 296 S.W.2d 123, 127 [5] (presumption of legality that a bus was equipped with required brakes and horn); 31A C.J.S. Evidence § 134, p. 275. Thus, the jury could find that Wendel had one half the width of Troost Avenue, 30 feet, plus 4 or 5 feet within which to stop or swerve. It may be judicially known that a motor vehicle traveling at 10 miles per hour may be stopped within 35 feet, Johnson v. Missouri Pac. R. Co., Mo.App., 72 S.W.2d 889, 895 [2, 3], and since it could be so stopped, it follows that since it is also commonly known that vehicles respond quickly and accurately to the driver's touch on the steering wheel, Perry v. Dever, Mo., 303 S.W.2d 1, 7 [13], Wendel could also have effectively swerved his vehicle to the right within the 35 feet, as alleged, and avoided the collision.

Pasley testified that his speed up to the collision was 5 to 10 miles per hour. He did not stop, slow down or swerve. When he first realized danger, he was 25 feet away. Although respondents argue that the evidence does not show from *what* he was 25 feet away, it is clearly inferable that he referred to danger, i.e., the possibility of collision, being within that distance. When Pasley first saw Wendel's truck it was 4 car lengths from the intersection. Under these circumstances, the jury could know that Pasley could stop the ambulance within a very few feet or practically instantly at his slowest speed of 5 miles per hour, Smith v. St. Louis Public Service Co., Mo.App., 252 S.W.2d 83, 85; Hamell v. St. Louis Public Service Co., Mo.App., 268 S.W.2d 60, 64 [1–3], and certainly within 25 feet. If the ambulance could be stopped within that distance, it could be swerved, at its slow speed, to avoid the collision, Perry v. Dever, supra. Respondents' points raising the submissibility of appellants' case are overruled.

■ Appellants contend that the court erred in refusing their oral motion for directed verdict made at the close of all the evidence on the issue of liability of respondents. Although appellants made a submissible case of negligence against respondents, the latter did not admit that ultimate fact, which was for the jury. Rutledge v. Baldi, Mo., 392 S.W.2d 244, 246 [1, 2]; Beezley v. Spiva, Mo., 313 S.W.2d 691, 695; Cluck v. Abe, 328 Mo. 81, 40 S.W.2d 558, 559. The trial court did not err in refusing to direct a verdict for appellants (plaintiffs below) on the issue of liability.

■ The trial court did not err in excluding proffered expert testimony of Miss Richardson concerning medical conclusions as to the reasonableness of medical expenses of Mrs. Schmidt. There was no medical evidence, or hospital record entries, that any of Mrs. Schmidt's alleged complaints while in the hospital were caused by the collision, or that she was treated in the hospital or by a physician for any injuries received in the collision for which a charge was made. Miss Richardson did not qualify as an expert witness in the matters offered. However, Miss Richardson did testify with clarity and without equivocation that before the collision Mrs. Schmidt did not have these injuries which Miss Richardson, as a lay witness, observed at the scene and thereafter: a knot on her head, the upper temple from the edge of her hair to her eyelash on the right side; there was blood on her face; her right hip was black and blue, and up to the time of trial the hip area swelled and Miss Richardson had to put hot packs on it and massage it. When they arrived at the hospital the knot on Mrs. Schmidt's head had swollen worse, and both areas (head and hip) were swelling and turning blue. See Norris v. St. Louis, I. M. & S. Ry. Co., 239 Mo. 695, 144 S.W. 783, 787 [4]; and Williams v. American Life & Accident Ins. Co., Mo.App., 112 S.W.2d 909, 916 [11, 12], to the effect that a lay witness may testify to observations of bodily condition made before and after an accident. Even though there was no medical evidence as to the injuries or causation, or even a list of the injuries on the hospital records testified to by Miss Richardson, we rule there was sufficient evidence from Miss Richardson to take to the jury the issue of Mrs. Schmidt's injuries and that they were occasioned by the collision and respondents' negligence, and which the jury could find would entitle Mrs. Schmidt to at least nominal damages. Respondents' contentions that there was no substantial evidence for the jury to determine that Mrs. Schmidt suffered injuries in the collision are for these reasons overruled.

■ Appellant Richardson says that the court erred in allowing argument by respondents of an unfavorable inference against her because of her nonproduction as witnesses the physicians whom she saw, termed by her to be mere consultant physicians. No medical witness testified for Miss Richardson concerning her claimed injuries. Her hospital record was introduced, with entries by a Dr. Cunningham,

her attending physician, relative to her injuries and treatment. She saw a Dr. Revis Lewis, a neurosurgeon, about a month after the collision. She was also referred by Dr. Cunningham to a Dr. James Bolin, who treated and examined her. Both Dr. Lewis and Dr. Bolin maintained offices and were still in the community at the time of trial. Miss Richardson called neither as expert medical witnesses. There was no error of the trial court in permitting counsel for respondents to comment upon Miss Richardson's failure to call her treating and examining physicians who were available to her, and who would have had knowledge of her claimed injuries superior to her hospital record and certainly as to what she herself testified to be her injuries. Russell v. St. Louis Public Service Co., Mo., 251 S.W.2d 595, cited by Miss Richardson, is not in point for the reason that the testimony of these two physicians would not have been relatively unimportant. These were examining and treating physicians, employed after the collision, who may have shed light on the subject of Miss Richardson's injuries, whether their testimony would have been corroborative, cumulative or superior to the evidence received. In this circumstance, counsel had the right to call the attention of the jury to the strong presumption raised by the failure to produce these witnesses that their testimony would have been unfavorable and damaging to her. See Trzecki v. St. Louis Public Service Co. et al., Mo., 258 S.W.2d 676, 679; Block v. Rackers, Mo., 256 S.W.2d 760, 764; Spaeth v. Larkin, Mo., 325 S.W.2d 767, 772. Miss Richardson's point raising this issue is overruled.

For her last point, Miss Richardson contends that the court erred in permitting the reading of portions of her original petition, first, and second amended petitions in the course of her cross-examination. Miss Richardson's testimony at the trial was that the siren on the ambulance was on and that the traffic signal was red for Pasley, its driver. The allegations in the prior petitions read were contrary to her testimony,

and by reason thereof were against her interest as to Pasley, and were admissible for impeachment purposes as offered by counsel for Wendel. Carter v. Matthey Laundry & Dry Cleaning Company, Mo., 350 S.W.2d 786, 791 [1,2]. Appellant Richardson's last point is overruled.

We find no reversible error in any respect contended as to the trial of appellant Richardson's case, and as to her the judgment is affirmed. For the reasons stated, appellant Schmidt made a submissible case of negligence and injury, and as to her the judgment is reversed and her case is remanded for new trial.

BARRETT and STOCKARD, CC., concur.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.