Credell MATHEWS, et al.,
Plaintiffs-Appellants,

v.

CHRYSLER REALTY CORPORATION,
Defendant-Respondent.

No. 31530.

Missouri Court of Appeals,
Western District.

Jan. 12, 1982.

Larry M. Brummet and Jay T. Grodsky, Kansas City, for plaintiffs-appellants.

Lee E. Wells, Kansas City, for defendant-respondent.

Before SOMERVILLE, C. J., Presiding, and TURNAGE and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

Plaintiff-Appellant Credell Mathews and his wife filed suit for injuries allegedly sustained by plaintiff because of defendant-respondent Chrysler Realty Corporation's negligence. Plaintiff submitted the case on the theory of *res ipsa loquitur*. Trial was had and the jury found for defendant.

Plaintiff was a security guard on the premises of defendant from 6:00 p. m. on April 7, 1975 through the night and until 6:00 a. m. on the morning of April 8. He claims that while patrolling the premises of defendant, a car dealership in Overland Park, Kansas, a metal cover fell from the roof of the building striking plaintiff on the right side of his head, neck, shoulder and rib cage area. The incident occurred at approximately 1:45 a. m. while plaintiff was alone on the premises. He testified that while patrolling the outside lot he heard a rumbling scraping noise, looked up and then was hit.

The object plaintiff claims hit him, a metal cover from a ventilator fan, was approximately 5′ × 2′ in size and weighed approximately 175 pounds. This cover would have fallen approximately 22′ before hitting him. Plaintiff claims to have lain on the ground about 15 to 20 minutes. Although dizzy, he managed to walk to a nearby motel, where he called his employer and explained what had transpired. Unable to get a replacement, he went back to defendant's lot and stayed until 6:00 a. m. He then drove home.

Plaintiff told his wife of the incident and she took him to see Dr. John Wells on the morning of April 8. Plaintiff received ultra massage on his shoulder and back from Dr. Wells some 12 times through April 29, 1975. He was referred by Dr. Wells to Dr. Collins, who saw him approximately four times, be-

ginning on May 5, 1975. Dr. Collins sent him to St. Luke's Hospital for approximately ten visits as an out-patient for heat therapy. Plaintiff then returned to Dr. Wells, who this time referred him to Dr. Rhodes in November, 1975. Dr. Rhodes performed a myelogram on plaintiff, and testified that plaintiff had a herniated disc in the cervical area.

Neither Dr. Wells nor Dr. Collins were called to testify by plaintiff. Dr. Rhodes was his only medical witness. Defendant, however, introduced the reports of Dr. Wells and Dr. Collins.

In the interest of brevity, it is noted that there was a conflict in the evidence presented as to exactly when the alleged accident occurred, the date plaintiff first reported the injury to employer and the date when plaintiff first saw Dr. Wells. Further, the evidence shows that Dr. Rhodes was apparently unaware of numerous injuries sustained by plaintiff prior to alleged accident.

Plaintiff's primary point on this appeal concerns defendant's closing argument wherein counsel told the jury that because Dr. Wells was not called as a witness by plaintiff, they could infer that his testimony would have been unfavorable. In his closing argument, plaintiff's counsel retaliated to this argument, stating that Dr. Wells was equally available. Defendant objected to plaintiff's retaliatory comment for the reason that Dr. Wells was not equally available, but that he was a treating physician, and his objection was sustained. Plaintiff now contends that the trial court erred in sustaining defendant's objection to his reasonable retaliatory remark.

At the time defendant's remark was made, plaintiff did not object nor did he do anything to convince the trial court that the remark was erroneous. To be successful, plaintiff's point must be predicated on a finding that defendant's remark was unwarranted and erroneous, and that plaintiff's retaliatory remark was therefore proper.

The failure of an opposing party to put on such a witness raises a negative

inference and may be commented upon by counsel in closing argument. *Stotler v. Bollinger*, 501 S.W.2d 558, 561 (Mo.App.1973). Moreover, it is presumed that a plaintiff's physician is peculiarly available to him and thus, comment regarding that physician's failure to testify is generally allowable. *Eickmann v. St. Louis Public Service Co.*, 363 Mo. 651, 253 S.W.2d 122 (Mo.1952).

■ This general rule is not applicable when there is a showing that the physician is "equally available" to the parties. *Hill v. Boles*, 583 S.W.2d 141 (Mo. banc 1979). The factors used to determine whether a witness is or is not equally available are set out in *Boles, supra*, at 145:

1. one party's superior means of knowledge of the existence and identity of the witness;

2. the nature of the testimony that the witness would be expected to give in the light of his previous statements or declarations, if any, about the facts of the case; and

3. the relationship borne by the witness to a particular party as the same would reasonably be expected to affect his personal interest in the outcome of the litigation and make it natural that he would be expected to testify in favor of the one party against the other.

■ Plaintiff has not offered evidence to rebut the presumption that Dr. Wells was peculiarly available to him, nor do the factors in *Boles* as applied here rebut that presumption. Dr. Wells was not "equally available," but stood in the same stead as the physician in *Trzecki v. St. Louis Public Service Company*, 258 S.W.2d 676 (Mo. 1953). There, the supreme court noted that "available" does not just mean accessible to subpoena but takes into consideration that a treating physician is more available to his patient and that an adversary party by calling the plaintiff's physician as a witness would have to vouch for his credibility and would not be able to cross-examine the physician.

Plaintiff cites to *Russell v. St. Louis Public Service Company*, 251 S.W.2d 595, 599 (Mo.1952), and *Missey v. Kwan*, 595 S.W.2d 460 (Mo.App.1980), for the proposition that if a physician's testimony is merely repetitious of the evidence available in his report, or if the facts indicate that there is no evidence that the physician's testimony would be superior to that of the witness who did testify, the unfavorable inference should not be allowed, or if it was, a reasonable retort to that inference should be allowed. Based on the facts here, these cases are not persuasive as Dr. Wells' testimony concerning plaintiff's injuries immediately after the accident would not have been repetitious and certainly would have been superior to that of a different doctor who saw plaintiff at a much later date.

In *Lineberry v. Robinett*, 446 S.W.2d 481 (Mo.App.1969), the court rejected an argument similar to plaintiff's argument here, *i.e.* that the doctors called as witnesses were not treating physicians and that their testimony would only corroborate what was contained in the hospital records. The court responded to this contention, stating that the doctors were "examining and treating physicians who were employed after the collision and certainly could have aided in developing the medical evidence regarding plaintiff's injuries," and that the inference was therefore allowable. *Id.* at 485. The same reasoning holds true here.

In *Richardson v. Wendel*, 401 S.W.2d 455 (Mo.1966), the plaintiff argued that the inference drawn from her failure to call her first attending physician was improper because he had been a "mere consultant." The court disagreed, saying that even though that physician's medical report had been offered into evidence, "[t]here was no error ... in permitting counsel for defendant to comment upon [plaintiff's] failure to call her treating and examining physician who would have knowledge of her claimed injuries superior to her hospital record and certainly as to what she herself testified to be her injuries. *Id.* at 460 (citing *Russell v. St. Louis Public Service Co., supra*).

In the present case, even though defendant had Dr. Wells' reports and introduced them into evidence, the facts indicate that Dr. Wells was plaintiff's treating and examining physician and could certainly have shed light on any outward indicia of injury to plaintiff from being struck by a 5' × 2' piece of metal weighing 175 pounds and falling 22' with a striking force of 1000 pounds. As in *Lineberry* and *Richardson*, plaintiff saw Dr. Wells immediately after the alleged injury and should have been best acquainted with his immediate signs of injury.[1] However, Dr. Wells' report on the initial examination does not mention signs of cuts or bruises around plaintiff's neck and shoulder areas, but points only to symptoms of dizziness as well as some swelling and tenderness in the neck, back and rib areas, for which the doctor prescribed physical therapy.

In sum, the trial court did not err in overruling plaintiff's retaliatory comment to defendant's comment on the failure of Dr. Wells to testify, as Dr. Wells was not equally available nor was his testimony that of a "mere consultant" or "merely cumulative."

In his second point, plaintiff claims prejudicial error arising out of the court's alleged inconsistent rulings on objections to questions asked of plaintiff's own expert witness, Dr. Oetting, a mechanical and aerospace engineer. During cross-examination by defendant's counsel, the following dialogue occurred:

Q: In your engineering capacity, what's the ability of the human body to withstand a blow of 1,000 pounds to the right shoulder?

A: I'm not familiar with that. The only thing I'm familiar with is from an engineering standpoint from which I made my calculations.

Q: Well, can you from an engineering standpoint tell me whether or not a blow of 1,000 pounds on the right shoulder would be likely to do some

damage to the bone structure of the shoulder?

PLAINTIFF'S COUNSEL: Your Honor, I object, Dr. Oetting has said he is an engineer and he is not qualified to make that sort of judgment.

THE COURT: Well, he may answer if he feels he is qualified.

Q: If you know.

A: Well, I'm confident that heavy loads can do body damage, yes.

On re-direct examination, plaintiff's counsel opened with the following question:

Q: Dr. Oetting, might not a force of 1,000 pounds striking an individual in the right neck area strike him, glance away, and not chip bone?

RESPONDENT'S COUNSEL: If the Court please, I object to this. The doctor has already testified he is not competent to make any calculations like that.

THE COURT: The objection will be sustained.

█ The trial court is vested with broad discretion in determining the admissibility of expert testimony, and the court's ruling should not be set aside absent an abuse of that discretion. *Yocum v. Kansas City Public Service Co.*, 349 S.W.2d 860, 864 (Mo. 1961). That discretion is abused only where the court's ruling is clearly against the logic of the circumstances or when it is arbitrary and unreasonable. *Anderson v. Robertson*, 402 S.W.2d 589, 593 (Mo.App.1966).

█ In the instant case the trial court allowed defendant's line of questioning, but it soon became apparent that the witness was not qualified to render an opinion. When plaintiff's counsel pursued the matter, the court properly sustained defendant's objection, excluding further opinion upon an area which the expert's opinion could have been of no aid to the average juror. Thus, the court's second ruling was

---

1. In addition, the evidence shows Dr. Wells saw plaintiff 11 additional times in April, 2 times in May and once in June.

proper. Moreover, even if the ruling on plaintiff's objection to the first question was error, its effect was not prejudicial and any error would be harmless, as the facts sought to be shown were otherwise fully and properly established. *Boten v. Brecklein*, 452 S.W.2d 86, 96 (Mo.1970). Defendant called Dr. Overesch as its expert medical witness, who testified, without objection, that a person being struck by an object the size of and with the force of the fan cover here would be crushed.

■ Plaintiff next argues that it was error for Judge Gant to overrule his Motion for New Trial because the verdict of the jury was against the weight of the evidence. This point is ruled against plaintiff for reason that this court is not at liberty to rule on the weight of the evidence in a jury tried case as that determination is for the trial court in ruling on the new trial motion. *Pickett v. Stockard*, 605 S.W.2d 196, 197–98 (Mo.App.1980). The determination as to the weight of the evidence is in the exclusive province of the trial court. *Strickner v. Brown*, 491 S.W.2d 253, 255 (Mo.1973). The burden is on the plaintiff, not the defendant, to make a case, and even if the defendant offers no evidence the jury is the proper judge of the credibility of the witnesses. The trial court did not abuse its discretion in overruling plaintiff's Motion for New Trial. *Paris v. Keefhaver*, 512 S.W.2d 892, 893–94 (Mo.App.1974).

■ Plaintiff's final point is that because of defendant's numerous improper arguments during final argument, plain error resulted, and this court should grant a new trial under Rule 84.13(c). Plaintiff made no objection to any of the arguments he now claims as improper. Therefore, he waived any prejudicial effect. *Stevens v. Wetterau Foods, Inc.*, 501 S.W.2d 494, 499 (Mo.App. 1973). The arguments here did not produce any manifest injustice or miscarriage of justice within the requirement of Rule 84.-13(c). *Blevins v. Cushman Motors*, 551 S.W.2d 602, 616 (Mo. banc 1977). Resort to this rule where no objection has been made is rare and will not be done here. *Sherpy v. Bilyeu*, 608 S.W.2d 521, 523 (Mo.App.1980).

The judgment of the trial court is affirmed.