Matthew Scott KELLER, b/n/f Carole Keller, Daniel Keller and Carole Keller, Appellants,

v.

INTERNATIONAL HARVESTER CORPORATION and Carl Looman, Respondents.

No. WD32713.

Missouri Court of Appeals, Western District.

March 1, 1983.

---

John C. Risjord, Terry L. Karnaze, Niewald, Risjord & Waldeck, Kansas City, for appellants.

Thomas O. Baker, Thomas E. Rice, Jr., Kansas City, and Thomas E. Allen, Liberty, for Intern. Harvester.

J. Nelson Happy, Happy, Cooling & Herbers, P.C., Kansas City, for Looman.

Before SOMERVILLE, C.J., and DIXON and CLARK, JJ.

CLARK, Judge.

This appeal is from an adverse jury verdict returned against plaintiffs, son and parents, in their claims for damages from an injury sustained by the son in a lawn mower accident. The judgment is affirmed.

On October 10, 1974, plaintiff Matthew Keller, then six years of age, was playing with other youngsters in the yard of neighbors when defendant Carl Looman arrived to mow the grass. Looman was using his 1968 Cub Cadet tractor with lawn mowing attachment, both manufactured by defend-

ant International Harvester. In one of his turns about the yard, Looman drove the mower past where Matthew was at play some fifteen feet distant. According to Matthew, as the mower came by, an object from the mower struck him in the eye. He felt immediate pain and withdrew an object which he testified was a blade of grass. Evidence of serious injury was immediately apparent and Matthew was taken to a hospital for treatment. In the following months, efforts to save the eye proved unsuccessful and the eye was surgically removed in August, 1975.

The present suit filed in 1980 alleged that the International Harvester mower was designed, manufactured and distributed without a guard or deflector plate rendering the machine dangerous to bystanders. The petition appeared to charge International Harvester with liability by reason of defective design of the mower, a failure to warn of hazards accompanying its use and a failure subsequently to remedy the defects when known. As to defendant Looman, liability was based on a claim he negligently operated the mower near the area where children were playing. On this appeal, nine points of error are asserted. They will be grouped for purposes of discussion.

## I.

In three points, appellants contend the trial court erred in denying admission of certain exhibits and in excluding proof intended to show other lawn mower accidents had occurred in similar fashion before and after the injury suffered by plaintiff Matthew Keller. The exhibits were photographs and written materials depicting safety shields and guards used on other mowing devices. To understand the mower design issue, some description of mower function drawn from testimony at trial by expert witnesses will be helpful.

From the standpoint of operating efficiency, mower blades which are neither guarded nor encased perform most effectively. Exposed rotating blades are dangerous, however, not only because of the hazard from the blades themselves but be-

cause the blades tend to lift objects from the ground and propel them at high speeds in all directions. Interests of safety require that mower design include a housing to enclose the blades from above and around the circumference, but the design must also provide a discharge mechanism for the grass cuttings. This is necessary because the absence of a relief chute causes cuttings to accumulate under the housing clogging the blade action and dropping the cuttings unevenly.

Design of the discharge chute affects the performance of the mower. While reducing the size of the chute by guards or deflectors increases safety, the efficiency of the mower suffers. The design of the chute also determines at what angle from horizontal the mower discharge will be propelled. Here, too, the design must recognize some compromise between safety and commercially acceptable function. Appellants' case here against International Harvester was grounded upon the contention that the design of the 1968 Cub tractor mower was unreasonably dangerous in that the discharge chute was not equipped with a guard or deflector plate to reduce the velocity and angle of objects thrown from under the mower.

As to the claim the International mower was defective in design, the theory of liability is that expressed in § 402A of the Restatement (Second) of Torts adopted by Missouri in Keener v. Dayton Electric Manufacturing Co., 445 S.W.2d 362 (Mo. 1969). Under the defective design theory, the plaintiff must prove the product as designed was so defective as to make the product unreasonably dangerous for its anticipated use. Cryts v. Ford Motor Co., 571 S.W.2d 683 (Mo.App.1978). As the opinion in Blevins v. Cushman Motors, 551 S.W.2d 602 (Mo. banc 1977) points out, strict liability in a defective design case depends not on reasonable anticipation that acts or omissions will cause harm or injury but on the foreseeable or reasonably anticipated use of the product. The strict liability claimant must therefore prove that the article as designed had a degree of dangerousness

which the law of strict liability will not tolerate,[1] and the use being made of the article at the time was one to be reasonably anticipated by the manufacturer.

In the present case, appellants undertook to prove, as the concept of strict liability required, that the mower in question was unreasonably dangerous as marketed without guarding or shielding of the discharge chute. As a part of that proof, the exhibits of the photographs and written materials were tendered to show the availability and feasibility of added guarding to the mower discharge chute. Appellants contend the exhibits were erroneously denied admission to appellants' prejudice. The points lack merit for several reasons.

■ In this case, unlike many design defect cases, the evidence was uncontroverted that no technological advance was necessary to add further guarding to the discharge chute. Appellants successfully demonstrated to the jury that International Harvester itself manufactured both a mulcher plate which closed the end of the chute and a steel extension plate which attached to the mower and lowered the angle of discharge. Also explored in the evidence were alternate possibilities of baffles, chains and rear baggers. Substantial evidence, apart from the exhibits denied admission, amply demonstrated to the jury the availability and means for closing or narrowing the mower discharge chute, a point which was never in actual contest. At most the ruling of the trial court merely excluded proof which was cumulative. There is no showing here that appellants were thereby prejudiced.

An additional ground for excluding some of the exhibits was their lack of relevance. Some of the photographs depicted a rotary cutter, an appliance designed to cut heavy brush and high weeds. A cutter differs from a mower in that the housing over the cutter's blades is open at front and rear to permit passage of the blades into and over rough materials. There is no side discharge from a cutter, the materials being expelled or discharged from the rear. A cutter is so dissimilar to a mower as to be of no comparative value. The photographs and narrative material portraying cutters was properly refused because not relevant to mower design.

Another exhibit was a photograph of a lawn mower manufactured by International Harvester in 1972 which had a deflector attachment on the chute. Any issue as to this exhibit has not been preserved for appellate review because there was no offer of proof. *International Harvester Credit Corp. v. Formento,* 593 S.W.2d 576, 579 (Mo.App.1979). We do observe, ex gratia, that the exhibit added nothing to appellants' case because a similar deflector attachment was admitted in evidence with a demonstration as to how it would have been attached to the Looman machine. Moreover, there was no showing that the 1972 model did not incorporate other design changes and no showing the 1972 model changes were technically available in 1968.[2]

■ Other materials rejected included photographs of mowers with chains at the end of the discharge chute, mowers with the same discharge arrangement as the mower used by Looman and a twenty-seven page document of photographs and text. Without exploring the details of these exhibits, it suffices to restate that the trial court excluded the exhibits as irrelevant. Decision as to relevancy is left to the sound discretion of the trial court and the ruling will be upheld on appeal unless abuse of discretion be shown. *Long v. Hooker,* 443

---

1. The Restatement recognizes in comment (k) to § 402A that some products are, by their nature or the state of the art, unavoidably unsafe. So too do apparently useful and desirable products reach the market encumbered with known but apparently reasonable risks. The sellers of such products are not held to strict liability if the product is properly prepared and marketed with appropriate warnings.

2. The admissibility in Missouri of evidence concerning post accident changes or warnings appears to be an open question. *Tennis v. General Motors Corp.,* 625 S.W.2d 218, 232 (Mo.App. 1981).

S.W.2d 178, 181 (Mo.1969). Taking into account the repetitive nature of some of the exhibits and the nature of others which depicted machines not comparable in function to mowers, no abuse of discretion in denying admission of the exhibits appears.

 The second and third points asserting error in the exclusion of evidence center upon proof appellants offered as to lawn mower accidents which allegedly occurred both before and after the subject mishap. Appellants contend the evidence had probative value to prove the mower design was defective and to prove also that International Harvester had notice of the problem. This contention serves to demonstrate a confusion which has permeated appellants' presentation of the case under a mixture of liability concepts. To this point, discussion of the case has assumed the pleaded and submitted theory of liability to have been strict liability for defective product design. Under that theory, knowledge, fault or remedial conduct by the manufacturer is not relevant, *Racer v. Utterman,* 629 S.W.2d 387, 395 (Mo.App.1981). It could thus be ruled that any proof as to what International Harvester had learned from accident reports was irrelevant. It is, however, unnecessary at this point to consider whether some other liability theory would have justified reception of the proof excluded because appellants laid no foundation to admit the accident data.

 The evidence of other accidents offered by appellants was in the form of answers to appellants' interrogatory propounded to International Harvester: "List all incidents, claims or lawsuits alleging damages, injuries or deaths reported to International Harvester Corporation resulting from projectiles thrown from rotary power mowers since January 1, 1961, when the Cadet series was first produced." The answers which International Harvester made were offered and objection was made on grounds of relevancy, materiality and lack of foundation. The objection was sustained except appellants' attorney was permitted to read to the jury from the list only dates of occurrences pre-dating the subject accident.

The interrogatory answers and the question to which they responded failed to postulate conditions substantially similar to the accident in suit. Most importantly, the interrogatory did not restrict accidents to those involving the same model and design as the mower used by Looman, nor did the interrogatory focus upon the causal design defect, the unguarded discharge chute. Some of the accidents included in the reports could well have resulted from entirely different mower models and under entirely different conditions of terrain or usage. The evidence in this broad format was obviously irrelevant.

For the reasons stated, we conclude the trial court did not err in refusing admission of the described exhibits and the tendered proof of other lawn mower accidents.

## II.

The next grouping of points concerns the verdict directing instructions as to defendant International Harvester and the form of verdict, all of which appellants contend were prejudicially erroneous. It is here that the indiscriminate mixture of liability theories prominently surfaces. For the reasons hereafter given, however, we find it unnecessary to decide upon what theory appellants grounded their case in pleading and proof because other theories were abandoned when submission to the jury was on strict liability alone.

A problem in considering appellants' points charging instruction error lies in the failure of appellants to comply with Rule 84.04(e). Nowhere in the brief do the instructions complained of nor the form of verdict appear. The legal file includes three copies of some instructions, two copies of others and signed and unsigned forms of verdict. No notation was appended by the court to any copies of the instructions to indicate which were given. It is an unjustified imposition on the appellate court to require of it a search of the legal file to ferret out which of the instruction forms are claimed to be erroneous. Such disre-

gard for the rules risks rejection of the points without consideration on the merits. *East v. Landmark Central Bank and Trust Co.,* 585 S.W.2d 222, 225 (Mo.App.1979). Without condoning the omission in this case, we review the points ex gratia drawing upon the record as best we can to determine the instruction errors appellants seek to present.

■ Paraphrased, the point as to the verdict directing instruction contends the instruction as given was incomplete and inaccurate because it failed to inform the jury that International could be liable, despite absence of defect in design of the mower, if it failed to offer to previous purchasers of mowers safety devices subsequently produced and, if International failed to warn previous purchasers of hazards attendant upon failure to use the added devices. Apparently the contention is based on a perceived duty of manufacturers to supply where available all safety improvements regardless of when such improvements are developed in reference to the date of manufacture. Appellants contend MAI 25.04, after which the verdict directing instruction here was patterned, is itself erroneous because the form makes no provision for elements which appellants categorize as "retrofitting."

The first problem with the point is that appellants tendered no verdict directing instruction containing the liability submission they now claim should have been given. Thus, the context of such an instruction is no more than speculation and conjecture as is the ruling of the trial court had the instruction been offered. In *Wallace v. Waco Scaffold & Equipment Co., Inc.,* 606 S.W.2d 480 (Mo.App.1980), a similar claim was made as to a MAI 25.04 instruction which plaintiffs there claimed contained an inadequate definition of the term "defective condition." The opinion points out that absent a proposal of an instruction tendered and refused by the court, the appellant preserves nothing for review when the court gives the instruction which appellant submitted. There is a duty to offer a clarifying or amplifying instruction where the litigant believes the situation is not clearly or sufficiently hypothesized.

The verdict directing instruction in the form of MAI 25.04 was offered by appellants, it was given by the court and it conformed, at least in part, to the pleaded theory of strict liability for a design defect and the proof that a safer mower could be designed with improved guarding of the discharge chute. While there can be no question that other theories of liability including negligence in product design, negligence in failure to take account of accidents experienced while the product is in use or even strict liability under a duty to warn could conceivably have been extracted from appellants' proof and evidence, the fact is appellants chose to submit the case on the theory of defective design. If they now perceive that choice as unwise, it is too late to complain.

■ As a corollary to the proposition that instruction error is preserved in a case such as this by the offer of an instruction in a form claimed to be applicable, the rule also prevails that theories of liability or defense pleaded and proved but not submitted are abandoned. *Dudeck v. Ellis,* 399 S.W.2d 80, 98 (Mo.1966); *Phillips v. Vrooman,* 361 Mo. 1098, 238 S.W.2d 355, 357 (1951); *State ex rel. Highway Commission v. City of Washington,* 533 S.W.2d 555, 559 (Mo.1976). When appellants submitted their case under the instruction given, having proposed no other, they abandoned other theories of liability irrespective of whether pleading or proof would have supported another basis for instruction.

■ The second prong of appellants' points charging instruction error is related to the form of verdict supplied to the jury by the court, a form which was essentially MAI 36.05 with components from MAI 4.12 and 36.14.[3] The form requires the jury to

---

**3.** The form of verdict coupled with the verdict directing instructions posing essentially alternate bases of proximate causation, the negligence of Looman or the strict liability of International, present a question as to whether product defectiveness, if found to be the proxi-

indicate in sequence its finding for or against plaintiff and International Harvester, for or against plaintiff and Looman and thereafter, if plaintiff prevailed against either or both defendants, the amount of damages assessed. One set of signature lines concludes the form with instruction that all jurors agreeing to the verdict must sign. Appellants contend the verdict form was in error because only one set of signature lines precluded the jurors who were of such mind to reach different verdicts as to the separate defendants. The cases appellants cite in support of the point, *Dettler v. Santa Cruz,* 403 S.W.2d 651 (Mo.App.1966) and *Tietjens v. General Motors Corp.,* 418 S.W.2d 75 (Mo.1967), do not aid them. In each case, the form of verdict supplied was patterned after MAI 32.11 as found in the 1964 and 1966 editions respectively. That form of verdict markedly differs from the form supplied in the present case because MAI 32.11 contained no option for the jury to find for the plaintiff against less than all defendants. Moreover, the liability in each of the cited cases was based on a principal and agent relationship between the two defendants, thus precluding separate verdicts. Indeed, the form of verdict which the unsuccessful appellants in *Dettler* and *Tietjens* claimed should have been given, the then MAI 32.05, contained the option for inserting the names of the defendants against whom the verdict was returned but not the added group of signature lines appellants here claim were necessary.

The plain language of MAI 36.05 directs the jury to reach a separate decision as to each defendant. Those jurors who do not agree do not sign the verdict and if the concurrence of nine or more is not secured, no verdict is returned. The mere fact that the form of verdict requires a decision by the jury as to both defendants is no more coercive than the necessity for the jurors to agree on damages. If appellants read the

form of verdict otherwise, they misconstrue the language. The form of verdict used conforms to MAI and appellants cite no authority adopting a view that the form is erroneous. The point is rejected.

III.

Appellants next contend the court erred in permitting defendant International Harvester to adduce evidence from one Borghoff, an agricultural and products performance engineer. Over objection, Borghoff was permitted to testify that the velocity imparted to a blade of grass when discharged from a rotary mower could not cause a significant impact with an object 10 to 18 feet distant and that the mass of a blade of grass is so light that the impact would not cause traumatic injury. Appellants contend the Borghoff testimony should have been excluded because the witness was unqualified to express a medical opinion.

The crux of the matter on which the testimony of Borghoff, and one Bennett also called by International Harvester, focused was whether the injury could have occurred as plaintiff Matthew Keller described. The causal relationship between the accident and the injury was otherwise entirely dependent on Matthew's testimony because no medical evidence, apart from hospital records, was offered. Borghoff and Bennett were admittedly shown to be qualified as experts, Borghoff being a registered agricultural and safety engineer. At the same time, it was equally clear that Borghoff possessed no medical expertise and claimed no entitlement to render a medical opinion.

The rule is well settled generally that the questions of whether expert testimony should be admitted in a given situation and whether the witness called possesses expertise in the field are left to

mate cause of the injury, may also be combined with a charge of negligent use against another defendant to warrant a verdict against both defendants. Missouri cases have not spoken directly to this issue, but cases elsewhere have. *Kavanaugh v. Kavanaugh,* 131 Ariz. 344, 641

P.2d 258 (App.1981). The second collision doctrine, *Cryts v. Ford Motor Co.,* 571 S.W.2d 683 (Mo.App.1978), explores a different branch where the events are temporally separated. Issues presented on this appeal require no resolution of this seeming paradox.

the sound discretion of the trial court. *Parlow v. Dan Hamm Drayage Co.*, 391 S.W.2d 315 (Mo.1965). The admission or exclusion of expert testimony by the trial court will not be disturbed on appeal unless it plainly appears the trial court has abused that discretion. *Limbocker v. Ford Motor Co.*, 619 S.W.2d 757 (Mo.App.1981).

The facts of the present case compose a mirror image of the situation in *Mathews v. Chrysler Realty Corp.*, 627 S.W.2d 314 (Mo.App.1982). There, plaintiff claimed to have suffered neck and back injuries when struck by a 175 pound metal cover which fell 22 feet from the roof of a building. The injury was not disabling at the time and at most, plaintiff suffered bruises and a herniated cervical disc. Defendant sought to prove that the force of the metal cover falling 22 feet would strike with a force equal to 1000 pounds and would have a significant impact. An engineer was called and permitted to testify as to the force so exerted, but he was properly restricted, on further examination, from testifying as to the potential for bone damage. The similarity between the *Mathews* case and the subject case is that in each the expert testimony dealt with physical properties of velocity, mass and force in contraposition with the extent of injury claimed to have resulted.

Whether a causal relationship between a trauma and an injury exists is normally the subject of expert medical testimony, given the hypothesis of the accident facts. In a case such as the present action, and the *Mathews* case, the force exerted may be particularly relevant, however, where the force appears to be grossly disproportionate to the injury. Jurors do not have from their common experience any refined knowledge concerning the velocity and mass of a blade of grass discharged from a rotary lawn mower. They were entitled to that information from the expert witness Borghoff and we are not disposed to convict the trial court of error for permitting that testimony from the witness.

IV.

Additional points raised by appellants require no extended discussion and are found to be without merit. Among these is the contention that a photograph taken of plaintiff Matthew Keller after surgical removal of the eye was improperly excluded. Apart from the absence in this record of any sufficient foundation laid for introduction of the photograph, no argument has been advanced here and none was presented to the trial court demonstrating how the photograph was calculated to aid the jury in understanding the case.

Admission or rejection of photographs rests in the first instance on exercise of the trial court's discretion and its ruling will not be overturned on appeal unless that discretion has been abused. *State ex rel. State Highway Commission v. Haywood*, 631 S.W.2d 928, 929 (Mo.App.1982). No abuse of discretion appears in the rejection of the photograph. The case presented no jury issue as to whether plaintiff had suffered the loss of the eye, only the issues of whether the loss was traumatic in origin, and, if so, the agency causing the trauma.

Appellants also contend they were erroneously denied the opportunity to offer evidence as to the failure of International Harvester to warn children of the danger from lawn mowers. The point lacks any factual basis in the record. Apart from repetitive cross-examination of a defense witness who denied any knowledge of the subject, appellants offered no proof of a failure to warn. Moreover, the evidence showed that the danger of objects thrown from a mower is open and obvious, Matthew Keller had been warned by his parents of the danger and the mower operator, Carl Looman, acknowledged he was fully aware of the danger. There was no competent evidence of failure to warn offered, much less refused, and the probative value of such evidence, even if tendered, was negated by the actual knowledge of the danger. *Haines v. Powermatic Houdaille, Inc.*, 661 F.2d 94 (8th Cir.1981).

In a final point, applicable only to defendant Looman, appellants complain of jury argument permitted on behalf of Looman referring to "the time that's left to him in his retirement" and preclusion of appellants' retaliatory argument that the verdict "has absolutely not one dime's effect on Mr. Looman's future." As to the former, appellants claim the argument was an improper plea of poverty. Whether such was or was not a possible inference, the point is not preserved because there was no objection when the argument was made. The claim of error is foreclosed from consideration. *Peters v. Henshaw,* 640 S.W.2d 197, 201 (Mo.App.1982). As to the retaliatory argument by appellants, the trial judge apparently deemed the argument prejudicial because a veiled reference to insurance. Control of final argument rests largely in the discretion of the trial court and rulings are not to be disturbed on appeal except on a showing of abuse. *Hart v. Forbes,* 633 S.W.2d 90, 92 (Mo.App.1982). We find no abuse of discretion in the trial court's ruling on this point.

The judgment is affirmed.

All concur.