Reverend A.L. JOHNSON, Appellant,

v.

Russell RICHARDSON, Appellee.

No. 82–1350.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 14, 1982.

Decided March 11, 1983.

---

J. Nelson Happy, Martin M. Montemore, Happy, Cooling & Herbers, P.C., Kansas City, Mo., for appellee.

Charles C. Shafer, Jr., Kansas City, Mo., for appellant.

Before BRIGHT and McMILLIAN, Circuit Judges, and HARRIS,* Senior District Judge.

McMILLIAN, Circuit Judge.

Reverend A.L. Johnson appeals from a final judgment entered in the District

---

* The Honorable Oren Harris, United States Senior District Judge for the Eastern and Western Districts of Arkansas, sitting by designation.

Court for the Western District of Missouri[1] upon a jury verdict awarding Johnson $2,658 for damages negligently inflicted upon his person and property by appellee Russell Richardson. For reversal Johnson argues that the district court committed several prejudicial trial errors and that the jury's verdict was grossly inadequate and against the weight of the evidence. We affirm the judgment of the district court for the reasons discussed below.

On May 17, 1979, while appellant Johnson was driving his late model Cadillac into a Kansas City intersection, appellee Richardson drove through a red light and struck Johnson's car. The estimated speed of Richardson's car at the moment of impact was ten miles per hour. The damage to both cars was relatively slight. Although Johnson had no immediate serious physical complaints, he did go to the emergency room of Martin Luther King Memorial Hospital (the Hospital) for a physical examination.

The emergency room report states that Johnson complained of neck and back pain and nervousness which was diagnosed as cervical and lumbosacral strain caused by the auto accident. The report also reveals that Johnson complained of erosion of his prepuce. Later, Johnson was discovered to have diabetes. He also subsequently underwent a circumcision to ameliorate the erosion of his prepuce. In September of 1979, Johnson filed this suit to recover for damages to his car and personal injuries caused by the accident, including those relating to his diabetes and circumcision.

I. *Trial Errors*

One of the principal issues at trial was whether or not the auto accident was the proximate cause of Johnson's diabetes and circumcision. Plaintiff's theory was that the trauma of the collision caused or activated Johnson's diabetes. The increased urine sugar associated with Johnson's diabetic condition caused irritation to Johnson's prepuce, which in turn made the circumcision necessary. To prove the theory, Johnson's attorney introduced the deposition of Johnson's personal physician, Dr. Taliaferro. The deposition was read to the jury in lieu of Dr. Taliaferro's live testimony because, according to Johnson's attorney,[2] Dr. Taliaferro had been called out of town on an emergency and would not be available to testify before the end of trial.

To rebut Johnson's causation theory, Richardson introduced the testimony of Dr. Michael Cooper. Dr. Cooper's expert opinion was that the ten mile per hour auto collision could not have caused Johnson's diabetes or required Johnson's circumcision. Specifically, Dr. Cooper testified that because the emergency room physician noted erosion of Johnson's prepuce on the day of the accident, the pathology necessitating Johnson's circumcision was one of long standing rather than one induced by trauma occurring that day.

In an effort to undermine the basis of Dr. Cooper's opinion concerning the causal relation between the auto accident and Johnson's circumcision, Johnson's attorney attacked the medical qualifications of D.C. Parra, the person who made the notations in the emergency room report. Johnson's attorney asked Dr. Cooper: "If I would suggest to you that Mr. D.C. Parra was not a physician and had never completed medical school, what faith would you put in his analysis or diagnosis?" Dr. Cooper answered: "None." Johnson's attorney then asked: "If I would suggest to you that he was merely a talented nurse, male nurse, and he was fired from the staff of Martin Luther King Hospital . . . would that affect your opinion of what he put in the medical records?" "Yes," was Dr. Cooper's reply. Johnson's attorney assured the court that it would introduce evidence to support the allegations contained in these hypothetical questions.

---

1. The Honorable Joseph E. Stevens, United States District Judge for the Western District of Missouri.

2. No evidence of Dr. Taliaferro's unavailability was introduced by Johnson's attorney. Nor had Dr. Taliaferro been subpoenaed by Johnson's attorney prior to trial.

In response to this unexpected attack, Richardson's attorney sought to establish D.C. Parra's qualifications as a physician. Because D.C. Parra was completing special cardiology training in Michigan at the time of trial, Richardson's attorney tried to subpoena D.C. Parra's personnel records from the Hospital. A secretary at the Hospital, however, tore up the subpoena when it was served upon her.[3] Richardson's attorney then called D.C. Parra's brother, Dr. Miguel Parra, to the stand. Dr. Miguel Parra testified that his brother, D.C. Parra, had graduated from medical school in Spain. Johnson objected to this hearsay testimony but the objection was overruled on the basis of the family history exception to the hearsay rule.

Later, in response to a phone call from Johnson's attorney, the Hospital's records custodian finally brought D.C. Parra's personnel file to court where it was introduced into evidence. The file showed that D.C. Parra had been granted temporary medical privileges at the Hospital by the Hospital's chief of staff and that D.C. Parra had graduated from the University of Granada Medical School. There was nothing in the file that indicated that D.C. Parra was merely a male nurse or that he had been fired from the Hospital. The file did contain a letter of resignation from D.C. Parra explaining that he was leaving in order to acquire advanced medical training. But the letter of resignation was accompanied by a letter from the Hospital which praised D.C. Parra's work and invited him to rejoin the medical staff after completing his advanced training.

A. Hearsay

■ Johnson objected to Dr. Miguel Parra's testimony concerning the educational background and qualifications of his brother, D.C. Parra. Johnson claims that the testimony is hearsay and is beyond the scope of the family history exception to the hearsay rule. See Fed.R.Evid. 804(b)(4).

We find it unnecessary to resolve the question, for even if Dr. Miguel Parra's testimony was inadmissible hearsay, its admission was at best harmless error. The qualifications of D.C. Parra as a physician was an extremely tangential issue which the Hospital's personnel file on D.C. Parra addressed in full. After the file was produced and introduced as evidence, Dr. Miguel Parra's testimony was merely cumulative. The error, if there was any, did not prejudice Johnson's case.

B. Unrequested Jury Instruction

After closing arguments were delivered, the trial judge instructed the jury to disregard any comments about D.C. Parra being fired or being a male nurse because no evidence was offered to support these allegations. Johnson claims that this unsolicited instruction was highly prejudicial because it inferred that Johnson and his counsel were both liars. Counsel states he could not object before the instruction was given because he had not been informed that the instruction was to be given. He also felt he could not object when the instruction was delivered because any objection at that point would have generated further prejudice. Johnson argues that delivery of the unsolicited instruction was a violation of Fed.R.Civ.P. 51, the mandatory provisions of which require granting his motion for a new trial.

■ A federal trial judge has a large degree of discretion in offering even-handed, unbiased comments upon the evidence. *Skogen v. Dow Chemical Co.*, 375 F.2d 692, 704 (8th Cir.1967). In this case serious allegations were made by Johnson's counsel which were offered with the assurance that evidence would be introduced to support them. No such evidence was ever offered by Johnson and all the evidence that was introduced on the subject contradicted the allegations. Additionally, these allegations raised a collateral issue which tended to

---

**3.** Richardson's attorney notes that Johnson is a member of the Hospital's Board of Directors and that Johnson's attorney in this case is also the Hospital's counsel. Richardson's attorney seems to imply that the Hospital's lack of cooperation may be due to Johnson's position and advice from counsel. However, no evidence was adduced to support this inference.

obfuscate the trial's major issues. It was within the trial court's discretion to make an accurate parenthetical comment that helped to clarify and delineate the real issues at trial. *Cf. Fulton v. Chicago, Rock Island & Pacific R.R.,* 481 F.2d 326, 336 (8th Cir.1973).

## C. Absent Witness Closing Argument

■ During closing arguments, Richardson's attorney commented upon Dr. Taliaferro's failure to testify and Johnson objected. The general rule in Missouri is that the failure of an opposing party to put on a key witness raises a negative inference and may be commented upon by counsel in closing argument. The general rule is not applicable, however, if the witness is shown to be equally available to both parties. *Hill v. Boles,* 583 S.W.2d 141, 145 (Mo.1979) (banc). Johnson argues that Dr. Taliaferro was equally available to Richardson, and Richardson's deposition of Dr. Taliaferro proves the point. Thus, Johnson asserts it was reversible error to permit Richardson's attorney to inquire: "Why didn't [Dr. Taliaferro] come?", and imply that Johnson did not call Dr. Taliaferro because Johnson feared what Dr. Taliaferro would reveal on cross-examination.

■ We do not agree with Johnson's assertion. In Missouri, a plaintiff's physician is presumed to be peculiarly available to the plaintiff and comments regarding plaintiff's physician's failure to testify are generally allowable. *Matthews v. Chrysler Realty Corp.,* 627 S.W.2d 314, 317 (Mo.App. 1982). " 'Available' does not just mean accessible to subpoena . . . ." *Id.* The term takes into consideration that a treating physician is likely to be more sympathetic to his patient's cause and would naturally tend to testify in his patient's favor if at all. *Id.* As in *Lange v. Schultz,* 627 F.2d 122, 127 (8th Cir.1980), the reason for Dr. Taliaferro's failure to testify at trial was within the realm of speculation. Johnson's proffered reason that Dr. Taliaferro had been called out of town on an emergency was but one possible reason for Dr. Taliaferro's fail-

ure to appear.[4] It was not error to permit Richardson's attorney to comment upon Dr. Taliaferro's absence at trial.

## D. The Jury's Requests to Take Evidence to the Jury Room

After deliberating for a short while, the jury requested that it be given a copy of Dr. Taliaferro's deposition and also the Hospital's personnel file on D.C. Parra. The trial judge ruled that because the personnel file was a properly admitted exhibit in the case, it could be sent to the jury room. The trial judge ruled, however, that Dr. Taliaferro's deposition could not be given to the jury because it would unduly accentuate the deposition testimony. Johnson objects to both rulings. Johnson's position is that because Richardson's attorney was permitted to comment about Dr. Taliaferro's absence at trial, the jury's request to re-read Dr. Taliaferro's deposition should have been granted. Also, Johnson contends that because the personnel file contained many irrelevant and hearsay documents it should not have been given to the jury without redaction.

■ The decision whether to accede to a jury's request to review testimony or exhibits in the jury room during deliberations is generally left to the sound discretion of the trial court. *United States v. Mesteth,* 528 F.2d 333, 334 (8th Cir.1976); *Leathers v. United States,* 471 F.2d 856, 863 (8th Cir. 1972), *cert. denied,* 412 U.S. 932, 93 S.Ct. 2754, 37 L.Ed.2d 161 (1973). That discretion was not abused in this case. Richardson's attorney's comments about Dr. Taliaferro's absence were proper. Although the personnel file did contain a few irrelevant items, the whole file was admitted into evidence. Additionally, the major documents in the file were separately drawn out, marked as exhibits, and admitted into evidence without objection. Any error in admitting the entire file into evidence was harmless.

## II. The Verdict

■ Johnson raises two additional points of error relating to the jury's verdict.

4. *See* note 2 *supra.*

First, he argues that it was error to give the jury a general verdict form because under Missouri Rule of Civil Procedure 71.06, verdict forms in a negligence action must be divided into personal and property damages. This argument is in error. Submission of special verdict forms to a jury is a matter of federal law governed by Federal Rule of Civil Procedure 49. *Bartak v. Bell-Galyardt & Wells, Inc.*, 629 F.2d 523, 531 (8th Cir.1980); *Victor-American Fuel Co. v. Peccarich*, 209 F. 568 (8th Cir.1913), *cert. denied*, 232 U.S. 727, 34 S.Ct. 603, 58 L.Ed. 817 (1914). Its resolution is committed to the sound discretion of the trial judge and that discretion was not abused here. *See Bartak v. Bell-Galyardt & Wells, Inc.*, 629 F.2d at 531.

Second, Johnson claims that the jury's verdict is against the weight of the evidence because no combination of his proven specific damages add up to the jury's verdict of $2,658.00.[5] In addition, Johnson maintains that because the jury's award is less than his out-of-pocket losses, it makes no allowance for his pain and suffering and, therefore, the verdict is grossly inadequate.

 The fact, cause, and measure of damages in a negligence action are questions for the jury to resolve. *Spears v. Hough*, 458 F.2d 529, 531 (8th Cir.), *cert. denied*, 409 U.S. 878, 93 S.Ct. 130, 34 L.Ed.2d 131 (1972); *Twin City Plaza, Inc. v. Central Surety & Insurance Corp.*, 409 F.2d 1195, 1203 (8th Cir.1969). It is only with great reprobation that an appellate court will invade the jury's prerogative in such matters by declaring their verdict to be either excessive or inadequate. *Spears v. Hough*, 458 F.2d at 531. In this case, the causal link between Richardson's negligence and Johnson's diabetes or circumcision is weak. Even Johnson's own medical expert,

Dr. Taliaferro, was equivocal on the issue of causation. The jury could have reasonably concluded that any costs for treatment of Johnson's diabetes or for his circumcision were not attributable to the auto accident. The jury also could have concluded that Johnson's car suffered little or no loss in market value after it had been repaired. Thus, the jury could have awarded Johnson only the cost of the emergency room ($123.00), and the additional cost of repairing the car ($300.00), with the balance of the $2,658.00 being allotted to loss of fair market value to Johnson's car, the hospital and doctor bill costs attributable to Johnson's back strain, and Johnson's pain and suffering. *See Marlowe v. Garden Services, Inc.*, 411 F.2d 473, 474 (5th Cir.1969) (per curiam).

The jury's verdict was rendered after a trial free from reversible error and is supported by the weight of the evidence. Accordingly, the judgment of the district court is affirmed.

---

5. Johnson offered proof of the following specific damages:

| Amount | For |
|---|---|
| $ 123.00 | Emergency Room |
| 585.00 | Dr. Taliaferro's Bill—primarily for treatment of Johnson's diabetes and performing the circumcision |
| $1,877.32 | Hospital Bill—primarily for treatment of Johnson's diabetes and services related to Johnson's circumcision |
| 300.00 | Amount of auto repair bill not covered by insurance |
| 2,000.00 | Loss of fair market value to Johnson's car after repairs completed |
| $4,885.33 | Total specific damages alleged |